[Cite as *State v. Gatewood*, 2021-Ohio-3325.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                                    :                APPEAL NO.  C-190654
                                                                            TRIAL NO.  B-1803186
      Plainitff-Appellee,                    :
                                                                                *O P I N I O N.*
  vs.                                                 :

RASHAWN GATEWOOD,                        :

      Defendant-Appellant.                :



Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 22, 2021


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee State of Ohio,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellant Rashawn Gatewood.

**CROUSE, Judge.**

{¶1} Defendant-appellant Rashawn Gatewood appeals his convictions for felonious assault and having weapons while under a disability. For the reasons set forth below, we affirm the judgment of the trial court.

### I.  Facts and Procedure

{¶2} On May 31, 2018, Gatewood shot Dontay Jackson. The following testimony was presented at trial.

{¶3} Gatewood testified that his 14-year-old daughter told him that 21-year-old Jackson had inappropriately touched her. Jackson was an extended family member of Antwanette King, Gatewood's girlfriend and the mother of his children. Gatewood and King immediately went to Jackson's house. Gatewood's cousin, John Shields, and longtime friend, Chris Marlow, rode with them. Gatewood testified that they had no knowledge of the alleged sexual assault and remained in the vehicle at all relevant times.

{¶4} Jackson lived with his mother (and King's cousin), Melinda Brown, and his 17-year-old sister, Je'da Brown, on the second floor of a multifamily house. When Gatewood and King arrived, Je'da and Melinda were present and invited them inside. Gatewood told Melinda that he wanted to speak to Jackson about his daughter. The testimony differed as to what happened next. The state's witnesses testified that Jackson soon came downstairs, appearing as if he had just awoken. The defense witnesses conversely testified that Melinda called Jackson, and shortly thereafter, he entered through the front door. Upon seeing Jackson, Gatewood asked to talk to him outside. Jackson agreed.

{¶5} Gatewood and Jackson walked down the stairs, distantly followed by Je'da, King, and Melinda. Melinda testified that she saw Gatewood putting on gloves

2

in the stairwell. Jackson testified that Gatewood was wearing gloves when he reached the bottom of the stairwell.

{¶6} Once outside, Gatewood asked Jackson, "Did you touch my daughter?" Jackson replied, "Who's your daughter?" The conversation repeated. Gatewood then pulled out a 9 mm semiautomatic pistol and shot Jackson in the leg. The conversation lasted less than one minute. The state's witnesses testified there was no yelling, arguing, or physical altercation before the gunshot.

{¶7} Gatewood testified that he shot Jackson in self-defense. According to Gatewood, Jackson disingenuously denied knowing his daughter, so Gatewood threatened to call the police. The defense witnesses testified that Jackson began yelling at Gatewood, calling him a "police ass nigger" for wanting to involve the police. Gatewood testified that Jackson then reached behind his back and lunged forward. Shields and Marlow testified that Jackson was reaching for a black handle. Gatewood testified that he instinctively pulled out his gun and shot Jackson in the leg. According to Gatewood, "I feared for my life." At the time of the offense, Gatewood had a concealed-carry permit issued by the state of Virginia.

{¶8} After Gatewood shot him in the leg, Jackson fled. Jackson ran through the house, into the backyard, over a fence, and eventually collapsed in the stairwell to a neighbor's basement. Gatewood also left the scene and eventually turned himself in at the police station. The police officers searched Gatewood's vehicle and seized three firearms and a bulletproof vest. At the time of his arrest, Gatewood had a 1999 juvenile adjudication for the commission of an offense that would have constituted felonious assault.

{¶9} Gatewood was charged with two counts of felonious assault and one count of having weapons while under a disability. Following a seven-day jury trial,

3

Gatewood was found guilty on all counts and sentenced to an aggregate six-year prison term. Gatewood timely appealed, raising the following assignments of error for our review:

1. The imposition of a guilty verdict for the offense of having weapons while under disability by way of a juvenile adjudication which the state failed to prove involved a disability-creating offense violated Rashawn's due process rights and his right to bear arms under the Ohio and United States Constitutions.

2. The trial court erred in admitting the Ruger, Glock, bulletproof vest, and gloves at trial, and in failing to exclude the testimony of former police officer Thomas Rackley concerning arresting Rashawn as a juvenile in 1999, the collective impact of which prejudiced Rashawn and denied him a fair trial.

3. Rashawn was deprived of due process under the Ohio and United States Constitutions where his convictions for having weapons while under disability was obtained despite assertions from state and federal government officials informing him he could lawfully possess a firearm, otherwise known as entrapment by estoppel.

4. Rashawn's convictions for felonious assault and having weapons while under disability were not supported by sufficient evidence and/or ran contrary to the manifest weight of the evidence.

## II. *Weapons Under Disability*

**{¶10}** In his first assignment of error, Gatewood challenges his conviction for having weapons while under a disability on several grounds.

4

A. Disability-Creating Offense

{¶11} Gatewood first challenges the sufficiency of the evidence establishing a disability-creating offense.[1] Gatewood argues that the state failed to prove that he was previously adjudicated delinquent for a felony offense of violence. Gatewood claims that he was charged with felonious assault, but admitted to and was adjudicated delinquent of a lesser offense.

{¶12} We review challenges to the sufficiency of the evidence to assess whether, after viewing the evidence in a light most favorable to the state, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶13} Gatewood was convicted of having weapons under a disability under R.C. 2923.13, which provides:

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

(2) The person * * * has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

{¶14} The existence of a prior adjudication is an essential element of R.C. 2923.13. *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, 968 N.E.2d 27, ¶ 7 (1st Dist.). "Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with

---

[1] Although Gatewood's assignment of error is couched in terms of due process and the constitutional right to bear arms, the crux of his argument is that the state failed to present sufficient evidence of a disability-creating offense.

evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction." R.C. 2945.75(B)(1).

{¶15} In this case, the state offered into evidence the certified judicial entry of adjudication and identification testimony from the 1999 arresting officer. The judicial entry was captioned:

/99/01843 X

HENDON

COURT OF COMMON PLEAS OF HAMILTON COUNTY, OHIO

JUVENILE DIVISION

RASHAWN GATEWOOD

FELONIOUS ASSAULT

The body of the entry contained handwritten notations from every court appearance. On "3-9-99," the judge wrote "Change plea to admit. Adjudicate delinquent. Place on probation for investigation." Kristie Davis, the Chief Deputy Clerk for the Hamilton County Juvenile Court, testified that the judicial entry showed Gatewood was adjudicated delinquent for felonious assault on March 9, 1999.

{¶16} Viewing it in a light most favorable to the state, the judicial entry (along with Davis's testimony) sufficiently established that Gatewood was adjudicated delinquent for felonious assault on March 9, 1999. The caption plainly stated "FELONIOUS ASSAULT" and the entry provided, "Change plea to admit. Adjudicate delinquent." Nonetheless, the state further supplemented the judicial entry with the accompanying complaint and a record of complaints.

{¶17} The complaint charged Gatewood with knowingly causing serious physical harm to another in violation of R.C. 2903.11, a felony of the second degree. The record of complaints listed:

6

Case No: /99/001843 X      Date of Filing: 02/04/1999

Complaint: **Felonious Assault**      Offense Date: 02/04/1999

Degree: F2    Section: 2903.11

On "03/09/1999," the record stated "Changed plea to admit." and "Adjudged delinquent." Davis testified that the record of complaints again showed Gatewood was adjudicated delinquent for felonious assault on March 9, 1999. On cross-examination, Davis explained, "Had the charge been reduced, it would not appear as felonious assault on the rap sheet. * * * If Gatewood pled to a reduced charge, it would have been noted."

{¶18} The state also presented testimony from Thomas Rackley, the arresting officer in the 1999 case. Rackley testified that on February 4, 1999, he arrested Gatewood for felonious assault and aggravated robbery. Rackley confirmed that the defendant in this case was the same Rashawn Gatewood in the 1999 case. Rackley stated, "His facial features haven't changed in over 20 years. He still has what I describe like a baby face. He also has the same similar smirk that he had back in that time."

{¶19} Gatewood testified in his own defense. He did not dispute that he was the defendant named in the entry, but he claimed that he admitted to a lesser offense, not felonious assault. Gatewood testified, "I don't know what the exact charge was. I know they dropped it down to a lesser charge." Gatewood admitted that the judicial entry showed he was "adjudged delinquent of felonious assault," but contended that "it had to be a lesser charge or I wouldn't have been able to get my gun license." However, it was for the jury to decide whether to believe the state's evidence or Gatewood.

7

**{¶20}** The judicial entry combined with Rackley's identification testimony sufficiently proved Gatewood's prior adjudication for a felony offense of violence under R.C. 2945.75(B)(1).

### B. Notice of Disability

**{¶21}** Gatewood next argues that the state failed to prove that the juvenile court informed him he could not lawfully possess a firearm when he reached adulthood. Gatewood contends that the failure to advise a juvenile of a weapons disability violates the juvenile's due-process rights and infringes upon the constitutional right to bear arms. Because Gatewood did not raise the constitutional arguments in the trial court, we can consider only his sufficiency argument on appeal.

**{¶22}** Notice is not an essential element of R.C. 2923.13(A)(2). *State v. Earls*, 1st Dist. Hamilton No. C-040141, 2004-Ohio-6432, ¶ 9. By its terms, R.C. 2923.13 "requires only that the defendant 'knowingly' acquired, had, carried, or used a firearm or dangerous ordnance while such a disability existed. Thus, a defendant need only have knowledge as to the possession element of the offense and not knowledge of a disability." *Id.* Accordingly, the state was not required to prove that the juvenile court informed Gatewood of his weapons disability.

**{¶23}** This is not to say that we are unsympathetic to Gatewood's argument. This case brings to life the concerns raised by Chief Justice O'Connor in her dissent in *State v. Carnes*, 154 Ohio St.3d 527, 2018-Ohio-3256, 116 N.E.3d 138. "The effect is that a juvenile adjudication and disposition may punish an offender through adulthood without any notice to the juvenile that the disability exists or procedure for the juvenile court to consider whether the facts of the case warrant the disability." *Id.* at ¶ 23. As expressed by the Chief Justice:

Not one person on this court, in the legislature, and I dare say, in the public at large would want to be held accountable, years later, as an adult, for decisions that were made as a 16-year-old and adjudicated in the juvenile system. * * * And when a juvenile does not know that he has a weapons disability, the process to relieve himself of that disability has zero meaning. Without substantial procedural protections, the consequences of an adjudication of delinquency must have an end that is linked to the age of the child. To have the consequences follow the juvenile when he becomes an adult, with no time limitation, is profoundly unfair.

*Id.* at ¶ 43.

{¶24} Nonetheless, we are bound by the plain language of R.C. 2923.13 and the majority's decision in *Carnes*, neither of which requires notification that the juvenile adjudication carries with it a weapons disability.

### C. Relief from Disability

{¶25} Gatewood further challenges the sufficiency of the evidence, claiming that he was not under a weapons disability at the time of the assault. Gatewood asserts that any disability was relieved on his 23rd birthday, when his record was eligible to be automatically sealed pursuant to former R.C. 2151.358(C)(2).

{¶26} R.C. 2923.13 prohibits any person previously adjudicated delinquent of a felony offense of violence from possessing a firearm "[u]nless relieved from disability by operation of law or legal process." "The burden of establishing one falls within an exception or exemption of a crime falls upon the defendant-appellant[.]" *State v. Perkins*, 1st Dist. Hamilton No. C-75537, 1976 WL 189947, *2 (May 24, 1976), citing *State v. Casper*, 106 Ohio App. 176, 154 N.E.2d 9 (1st Dist.1958). Thus,

9

proving relief from a disability is an affirmative defense that must be raised by the defendant. *Id.*

{**¶27**} At trial, Gatewood presented a theory of defense that he was never under a weapons disability. Gatewood vehemently maintained that he pled to a lesser charge. Evidence supporting a relief-from-disability defense was never elicited, developed, or before the jury for consideration. By not raising it at trial, Gatewood waived the defense of relief from the weapons disability. *See State v. Haslam*, 7th Dist. Monroe No. 08 MO 3, 2009-Ohio-1663, ¶ 26.

{**¶28**} Gatewood's first assignment of error is overruled.

### III. Evidentiary Issues

{**¶29**} In his second assignment of error, Gatewood challenges several evidentiary rulings. Gatewood argues that the trial court erred in admitting two unrelated firearms, a bulletproof vest, and a pair of gloves, in violation of Evid.R. 404(B) and 403(A). Gatewood also argues that the trial court erred in allowing testimony about a 20-year-old juvenile arrest for aggravated robbery, in violation of Evid.R. 403(A). Finally, Gatewood argues that the cumulative effect of these errors deprived him of a fair trial.

{**¶30**} The trial court is vested with the sound discretion to rule on the admission or exclusion of evidence, and those rulings will not be overturned absent an abuse of discretion. *Renfro v. Black*, 52 Ohio St.3d 27, 33, 556 N.E.2d 150 (1990).

#### A. Other-Weapons Evidence

{**¶31**} Evid.R. 404(B) precludes evidence of other acts "to prove the character of a person in order to show action in conformity therewith." In *State v. Thomas*, 152 Ohio St.3d 15, 2017-Ohio-8011, 92 N.E.3d 821, the Ohio Supreme Court warned that other-weapons evidence—i.e., irrelevant evidence of weapons unrelated to the

charges—falls within the scope of Evid.R. 404(B).  Therefore, evidence of dangerous weapons, even though found in the defendant's possession, must be excluded when they are not relevant to the crimes charged and lead only to improper inferences about the defendant's character.  *Id.* at ¶ 36 and 41; *State v. Jones*, 2020-Ohio-281, 151 N.E.3d 1059, ¶ 32 (1st Dist.), *appeal allowed on other grounds*, 159 Ohio St.3d 1413, 2020-Ohio-3275, 147 N.E.3d 655.

{¶32}  Evid.R. 403 also seeks to eliminate the potential for prejudice.  Evid.R. 403(A) provides that "evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice[.]"

{¶33}  Here, the state sought to admit evidence that Gatewood had one firearm on his person and two firearms in his vehicle at the time of the offense.  Over Gatewood's objection, all three firearms were permitted to be introduced into evidence.  Gatewood admitted, and the state does not dispute, that he used only the 9 mm semiautomatic pistol during the commission of the offense.  The other two firearms remained in Gatewood's vehicle during all relevant times.  When ruling on Gatewood's objection, the trial court stated:

> It looks like somehow that he has [sic] a gun toting vigilante. When this fact whether he admits that he had one gun and he shot the victim, there is no issue of whether he had it in his possession and shot this individual. I can see where your argument would be that this is just too prejudicial for it to come in. However, I'm going to allow the prosecutor to go into the car. Your objection is duly noted.

{¶34}  For the first time on appeal, the state contends that the other two firearms were relevant to prove the weapons-under-disability charge. However, Count Three of the indictment charged Gatewood with knowingly having, carrying,

11

or using "a firearm." And to satisfy its burden of proof at trial, the state repeatedly argued that Gatewood knowingly possessed "the firearm" during the commission of the offense. In closing, the state asked the jury to find Gatewood guilty of having weapons while under a disability, stating: "He knowingly possessed the firearm on that day. He admits to having a firearm on that day * * * and the firearm was recovered." Thus, the state chose to focus solely on the firearm Gatewood had in his possession at the time of the offense to prove the weapons-under-disability charge.

{¶35} The state only mentioned the other firearms during rebuttal, wherein the state argued: "Mr. Gatewood claims that a teenager was throwing rocks at him. He's the one with three firearms, but yet he's afraid of rocks being thrown at him? He left because he knew what he did was wrong, and he had to come up with a good story to try to get himself out of a situation." This is exactly the type of evidence that the court in *Thomas* warned against—irrelevant evidence of other weapons that prejudicially portrays the defendant as a violent or dangerous person.

{¶36} The concurring opinion claims that the firearms were relevant to proving the weapons-under-disability count because the count in the indictment contained "three specifications" for each weapon found in Gatewood's possession. However, the three specifications that the concurrence refers to are forfeiture specifications pursuant to R.C. 2941.1417. In this case, the jury did not make a determination concerning the forfeiture specifications. In fact, the state did not seek forfeiture of the weapons at all. Perhaps under different circumstances, the state could introduce multiple weapons in a prosecution for having weapons while under disability, but the weapons would have to be relevant to the particular count charged. In this case, the other weapons in the vehicle were not relevant to proving Count Three and lead only to improper inferences about Gatewood's character. Admission

of the other weapons was more prejudicial than probative. Accordingly, the trial court abused its discretion in admitting evidence of the two unrelated firearms.

{¶37} The state also admitted evidence that Gatewood had a bulletproof vest in his vehicle at the time of the offense. The state argues that the vest was relevant to counter Gatewood's claim of self-defense. However, there is no evidence that Gatewood wore the vest during the commission of the offense. Thus, any probative value of the bulletproof vest was substantially outweighed by the danger of unfair prejudice. Accordingly, the trial court abused its discretion in admitting evidence of the bulletproof vest.

{¶38} "Error in admitting other weapons evidence falls generally into one of two categories: harmless error or prejudicial error requiring reversal." *Thomas*, 152 Ohio St.3d 15, 2017-Ohio-8011, 92 N.E.3d 821, at ¶ 38. "If a court determines that the error did not affect the defendant's substantial rights, then the error is harmless and shall be discarded." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 23; Crim.R. 52(A).

{¶39} "[W]hen a defendant asserts the affirmative defense of self-defense, an appellate court cannot determine whether the errors are harmless simply by looking at the strength of the remaining evidence." *Jones*, 2020-Ohio-281, 151 N.E.3d 1059, at ¶ 41. We instead look at the impact of the evidence on the verdict. *Id.*

{¶40} Although this was not a case of overwhelming evidence of guilt, there was certainly strong evidence of guilt. The evidence in this case showed that Gatewood had heard Jackson sexually assaulted his daughter. Gatewood immediately went to Jackson's house unannounced with a concealed weapon, asking to speak to Jackson outside. Two of the state's witness testified that Gatewood was wearing gloves as he walked outside. It is undisputed that Jackson was wearing only

basketball shorts and sandals, no shirt. The two briefly spoke in the front yard before Gatewood pulled out a gun and shot Jackson. The state's witnesses testified there was no yelling, arguing, or physical altercation before the gunshot. And although Gatewood and his witnesses testified that they believed Jackson had a gun, the responding officers never recovered a gun at the scene, in the house, or in the neighbor's yard.

{¶41} Gatewood never disputed that he purposefully shot Jackson. Instead, Gatewood asserted that he acted in self-defense. Gatewood testified that Jackson reached behind his back and lunged forward, and his own witnesses corroborated as much. However, the credibility of Gatewood's witnesses was questionable. Gatewood never informed the police of the witnesses and none of the state's witnesses placed them at the scene. Furthermore, the witnesses admitted that they had poor memories with regard to many details of the day in question, except for details that were favorable to Gatewood. For example, Marlow testified during cross-examination that he could not recall the weather conditions, the time of day, or the clothing worn by Jackson. The following exchange then took place:

A. Can I be honest? * * * I smoke weed, marijuana. And I don't recall what he had on.

Q. Were you smoking marijuana that day?

A. I smoke marijuana every day.

Q. So is it fair to say that you were under the influence of marijuana that day?

A. No.

Q. You just said you smoked it every day.

A. Yes. But it could have been a day or time that I wasn't.

14

Q. All right. Mr. Marlow, and so do you think that smoking marijuana might alter your brain in any way?

A. No. Because I remember exactly what happened.

Thereafter, Marlow again testified that he could not recall the weather conditions, the time of day, or the clothing worn by Jackson. However, Marlow testified that he did remember seeing Jackson reach behind his back, grab something black, and lunge towards Gatewood. Shields's testimony was likewise vague and conclusory, detailing only those facts favorable to Gatewood's defense.

{¶42} Gatewood also admitted that he owned multiple firearms and frequently carried guns. As part of his defense to having weapons under a disability, Gatewood testified that he obtained a concealed-carry permit through the state of Virginia and purchased two semiautomatic pistols from a firearms dealer. Therefore, Gatewood cannot demonstrate prejudicial error. Any error as a result of the admission of other-weapons evidence was harmless.

B. Evidence of Gloves

{¶43} Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. In determining relevance, we look to the elements of the offense charged and whether the evidence tends to prove or disprove any material element. *State v. Gardner*, 59 Ohio St.2d 14, 20, 391 N.E.2d 337 (1979). In the case of self-defense, we also look to the elements of the defense and whether the evidence tends to prove or disprove any material element. *State v. Nemeth*, 82 Ohio St.3d 202, 207, 694 N.E.2d 1332 (1998).

{¶44} In this case, the state had to prove that Gatewood did not act in self-defense. Under a theory of self-defense, the defendant claims that he had "a bona

fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force." *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus. Because Ohio has adopted a subjective standard for determining whether a defendant acted in self-defense, "[t]he defendant's state of mind is crucial to this defense." *State v. Purcell*, 107 Ohio App.3d 501, 505, 669 N.E.2d 60 (1st Dist.1995).

{¶45} At trial, Jackson and Melinda testified that Gatewood wore gloves during the commission of the offense. A review of the record shows that an inside-out glove was found in the front yard of Jackson's house. The glove appeared to have rubber grips on the outside of the palm.

{¶46} The state argued that evidence of the gloves proved a prior intent to shoot Jackson and disproved any theory of self-defense. The state pointed to the fact that Gatewood put on the gloves as he was walking outside and took off the gloves after the shooting. The state also pointed to the fact that one glove was recovered at the scene and the other glove was recovered with the gun in Gatewood's car. Furthermore, the state noted that the gloves "aren't just regular gloves either. These are the type of gloves that have the grippers on them." Based on these facts, the state contended that "[Gatewood] put on gloves because he was going to shoot Mr. Jackson, and he wanted to make sure he had a good grip on that gun[.]"

{¶47} Because a glove was found at the scene and tended to show Gatewood's state of mind, it was relevant evidence under Evid.R. 401.

{¶48} Gatewood countered that it had no bearing on whether he justifiably acted in self-defense and was unfairly prejudicial. He explained, "I have palmer hydrosis. * * * It's a sweating disorder. * * * If I did have them on, it was because my hands were sweating." However, any question about the inferences to be drawn

16

from the evidence was a question of weight, not admissibility. *State v. Smith*, 4th Dist. Pickaway No. 19CA33, 2021-Ohio-2866, ¶ 100, citing *State v. Irvine*, 9th Dist. Summit No. 28998, 2019-Ohio-959, ¶ 31. *See State v. Moore*, 10th Dist. Franklin No. 19AP-464, 2021-Ohio-1379 (holding that alternative explanations for social-media postings went to weight rather than admissibility of the evidence).

{¶49} Under these circumstances, the trial court did not err in admitting photographs and testimony of the gloves into evidence.

### C. Testimony of Officer Rackley

{¶50} Rackley testified at trial that in February 1999, he arrested then-12-year-old Gatewood for felonious assault and aggravated robbery. The state does not argue, and the record does not show, that evidence of the aggravated-robbery charge was relevant to prove or disprove any material element.

{¶51} However, any admission of the aggravated-robbery charge was harmless error. Davis's testimony, Gatewood's testimony, and state's exhibit 13 established that the charge resulted in a dismissal. Therefore, we cannot say that the trial court's refusal to strike Rackley's testimony about the aggravated-robbery charge impacted the jury's verdict.

### D. Cumulative Error

{¶52} Under the doctrine of cumulative error, " 'a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal.' " *State v. Leach,* 150 Ohio App.3d 567, 2002-Ohio-6654, 782 N.E.2d 631, ¶ 57 (1st Dist.), quoting *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995). "[T]he doctrine most often applies where the evidence is not overwhelming or when the outcome depends upon

witness credibility." *State v. Baber*, 1st Dist. Hamilton No. C-190338, 2021-Ohio-1506, ¶ 38.

{**¶53**} In this case, the trial court erred in admitting evidence of other weapons and evidence of a 1999 arrest for conduct that would have constituted aggravated robbery. However, the prejudicial impact of these errors was minimal. The state presented a strong account of the events, produced 11 witnesses (including eyewitnesses, police officers, and the victim), introduced corroborating photographs, and highlighted inconsistencies in the defense's case. Thus, the cumulative effect of the errors did not contribute to Gatewood's convictions and did not deprive him of a fair trial.

{**¶54**} Gatewood's second assignment of error is overruled.

### IV. Entrapment by Estoppel

{**¶55**} In his third assignment of error, Gatewood argues that the issuance of his concealed-carry permit and his purchase of firearms from a licensed firearms dealer constituted governmental assurances that his possession of firearms was legal under state law. Gatewood contends that under these circumstances, his conviction for having weapons while under a disability violates the constitutional guarantees of due process and must be barred by estoppel.

{**¶56**} At the outset, we note that neither this court nor the Ohio Supreme Court has recognized entrapment by estoppel as a theory of defense. And to the extent that Gatewood relies upon federal court decisions, his claim of estoppel must fail.

{**¶57**} "[E]ntrapment by estoppel is implicated where an agent of the government affirmatively misleads a party as to the state of the law and that party proceeds to act on the misrepresentation so that criminal prosecution of the actor

implicates due process concerns under the Fifth and Fourteenth Amendments." *United States v. Nichols*, 21 F.3d 1016, 1018 (10th Cir.1994). To establish a claim of estoppel, the defendant must show (1) an affirmative statement by a government agent that the charged criminal act was legal, and (2) reliance by the defendant. *Id.*; *United States v. Levin*, 973 F.2d 463, 467 (6th Cir.1992), citing *United States v. Smith*, 940 F.2d 710 (1st Cir.1991). "[T]he defendant's reliance must be reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *Id.*

{¶58} Gatewood contends that the state of Ohio should be estopped from prosecuting his possession of a firearm on two grounds: (1) the state of Virginia issued him a concealed-carry permit, and (2) the federal government conducted a background check and allowed him to purchase two firearms from a licensed firearms dealer. Gatewood argues that those representations were further compounded by the state of Ohio, which allegedly did not report Gatewood's disability-creating offense to any state or federal database. Gatewood asserts that he reasonably relied on the collective actions of the state of Ohio, the state of Virginia, and the federal government when he possessed the firearms in question.

{¶59} Contrary to Gatewood's assertions, an entrapment-by-estoppel defense is inapplicable here. First, neither the issuance of a concealed-carry permit nor the sale of a firearm amounts to an affirmative statement by a government agent that possession of a firearm is legal. What this indicates, at most, is that his disability-creating adjudication was not in the relevant databases. *See State v. Oberender*, Minn.App. No. A14-0477, 2014 WL 3892708, *1 (Aug. 11, 2014) ("[I]ssuance of a permit to possess firearms is not a government statement giving rise to an entrapment-by-estoppel due process violation."); *United States v. Shipley*, 777

Fed.Appx. 203 (9th Cir.2019) ("[F]ederal official's alleged behind-the-scenes participation in concealed carry permitting process did not affirmatively mislead defendant into relying on erroneous advice from federal government."). *See also United States v. Hullette*, 525 F.3d 610, 612 (8th Cir.2008) ("[A] report generated from the National Instant Criminal Background Check System (NICS) permitting the dealer to 'proceed' with a firearms sale is not the type of statement giving rise to the entrapment by estoppel defense."); *United States v. Lemieux*, 550 F.Supp.2d 127, 133 (D.Maine 2008) ("Mr. Lemieux has not presented the Court with any authority that an NICB computer check and a dealer sale that relies upon the NICB results amount to an affirmative statement of legality within the meaning of the entrapment by estoppel defense."). Second, Gatewood's alleged reliance would not have been reasonable because the concealed-carry permit plainly disavowed any representation of legality. The back of the permit reads: "The issuance of this permit does not authorize the holder to carry a concealed handgun if the holder is prohibited by law from possessing a handgun." Thus, Gatewood's conviction for having weapons while under a disability cannot be barred by estoppel and does not violate the constitutional guarantees of due process.

**{¶60}** Gatewood's third assignment of error is overruled.

### V. *Sufficiency and Manifest Weight of the Evidence*

**{¶61}** In his fourth assignment of error, Gatewood challenges the sufficiency and weight of the evidence supporting his convictions.

**{¶62}** A sufficiency-of-the-evidence argument challenges the adequacy of the evidence on each element of the offense. In reviewing a sufficiency challenge, we "view[] the evidence in a light most favorable to the prosecution" and determine whether "any rational trier of fact could have found the essential elements of the

20

crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 274, 574 N.E.2d 492 (1991).

{¶63} A manifest-weight-of-the-evidence argument challenges the believability of the evidence. In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

A.      Having Weapons While Under A Disability

{¶64} Gatewood argues that his conviction for having weapons while under a disability was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶65} In his sufficiency argument, Gatewood contends that the state failed to prove beyond a reasonable doubt that he admitted to a disability-creating offense in the Hamilton County Juvenile Court case numbered 99/01843X. We already considered this argument in the first assignment of error and concluded that his weapons-under-disability conviction was supported by sufficient evidence.

{¶66} In his weight-of-the-evidence argument, Gatewood does not further challenge the proof of the disability-creating offense. Instead, Gatewood limits his argument to the weight of the evidence supporting his entrapment-by-estoppel defense. We already considered this argument in the third assignment of error and concluded that his weapons-under-disability conviction was not against the manifest weight of the evidence.

### B. Felonious Assault

{¶67} Gatewood further argues that his conviction for felonious assault was against the manifest weight of the evidence. Gatewood contends that the state's evidence disproving his self-defense claim was not credible and that the jury's comments evinced a misapplication of the new self-defense standard.

{¶68} Under a theory of self-defense, the defendant claims that (1) he was not at fault in creating the situation giving rise to the affray; (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) he did not violate any duty to retreat or avoid the danger. *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus. If the evidence tends to support that the defendant acted in self-defense, then the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense. R.C. 2901.05(B)(1).

{¶69} Gatewood argues that his version of events was more credible than the state's version of events. Gatewood contends that Jackson's testimony was conflicting, and thus, not credible. For instance, at trial, Jackson testified that Gatewood never wanted to call the police. However, in a prior statement to the detective, Jackson mentioned that Gatewood threatened to call the police. Although Jackson's testimony was not entirely consistent, "[a] defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. The trier of fact is free to believe or disbelieve all or any of the testimony." *State v. Shine-Johnson*, 2018-Ohio-3347, 117 N.E.3d 986, ¶ 65 (10th Dist.).

{¶70} A review of the record shows there were also reasons to doubt Gatewood's version of events. As discussed above, much of the defense testimony was self-serving, biased, inconsistent, and fragmentary. In these kinds of cases, the trier of fact is in the best position to balance the competing testimony. Therefore, we cannot say that the jury clearly lost its way and created such a manifest injustice that Gatewood's conviction for felonious assault must be reversed.

{¶71} Gatewood further argues that the jurors' postverdict comments demonstrate that they misapplied Ohio's self-defense law. The record shows that after the verdict was rendered, defense counsel had the opportunity to speak with the individual jurors in the presence of the trial judge. At the posttrial hearing on Gatewood's motion for a new trial, the court reflected on counsel's prior discussion with the jury and stated: "[T]hey felt that your client put himself in a particular situation where he shouldn't have put himself in. That he didn't use good judgment in dealing with the situation. And they felt that he was spooked or scared in some fashion or form to let him pull that trigger." It is this last sentence that Gatewood seizes upon, arguing that the jury believed he had an honest, subjective belief of imminent death or great bodily harm.

{¶72} However, "the elements of self-defense are cumulative." *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986). Thus, the state need only disprove one of the elements of self-defense beyond a reasonable doubt. *State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 55 (11th Dist.).

{¶73} Here, if the jury felt that Gatewood put himself in a bad position and exercised poor judgment, then it was reasonable for the jury to conclude that Gatewood was at fault in creating the situation giving rise to the affray. Accordingly,

his conviction for felonious assault was not against the manifest weight of the evidence.

{¶74} Gatewood's fourth assignment of error is overruled.

## VI. Conclusion

{¶75} For the foregoing reasons, Gatewood's assignments of error are overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** concurs.
**WINKLER, J.,** concurs separately.

**WINKLER, J.,** concurring separately,

{¶76} I agree with the majority's decision to affirm Gatewood's convictions; however, I write separately to note my disagreement with the analysis applied by the majority in resolving Gatewood's second assignment of error related to the admission of two firearms police recovered from Gatewood's vehicle after Gatewood admitted to shooting Jackson.

{¶77} According to the majority, because Gatewood admitted to using a Taurus 9 mm semiautomatic pistol to shoot Jackson, the trial court erred in admitting into evidence the other two firearms found in Gatewood's vehicle under Evid.R. 404(B) and *State v. Thomas*, 152 Ohio St.3d 15, 2017-Ohio-8011, 92 N.E.3d 821. The majority opinion appears to cite *Thomas* for the blanket proposition that the admission of other-weapons evidence is error. To be clear, Evid.R. 404(B) and *Thomas* have no bearing on the initial admission of the weapons in this case.

{¶78} Here, the state indicted Gatewood for not only felonious assault for shooting Jackson, but also with having weapons while under a disability. The weapons-under-disability count in the indictment contained three specifications for each weapon found in Gatewood's possession: a Taurus 9 mm firearm, a Glock 9 mm

24

firearm, and a Ruger .380 firearm. In proving its case against Gatewood for having weapons while under a disability, the state was certainly entitled to present evidence of all three firearms found in Gatewood's vehicle. Because I fear that the majority's opinion could be read to prohibit the introduction of multiple weapons, even in a prosecution for having weapons while under a disability, I want to clarify that the initial introduction of such weapons-evidence to prove the offense charged is proper.

Please note:

The court has recorded its own entry on the date of the release of this opinion.