[Cite as *State v. Sommerville*, 2022-Ohio-4168.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

     Plaintiff-Appellee

-vs-

LEVON SOMMERVILLE

     Defendant-Appellant

JUDGES:
Hon. William B. Hoffman, P. J.
Hon. John W. Wise, J.
Hon. Craig R. Baldwin, J.

Case No. 21 CAA 11 0059

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. 21 CR I 03 0157 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | November 22, 2022 |

APPEARANCES:

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| MELISSA A. SCHIFFEL<br>PROSECUTING ATTORNEY<br>CORY J. GOE<br>ASSISTANT PROSECUTOR<br>140 North Sandusky Street<br>Delaware, Ohio 43015 | APRIL F. CAMPBELL<br>CAMPBELL LAW, LLC<br>545 Metro Place South<br>Suite 100<br>Dublin, Ohio 43017 |

*Wise, J.*

**{¶1}** Appellant Levon Sommerville appeals his conviction on one count of Felonious Assault, with a firearm specification, one count of Inducing Panic, and one count of Having a Weapon While Under Disability, entered in the Delaware County Court of Common Pleas following a bench trial.

**{¶2}** Appellee is the state of Ohio.

### STATEMENT OF THE FACTS AND CASE

**{¶3}** The relevant facts and procedural history are as follows:

**{¶4}** On March 3, 2021, at approximately 12:27 p.m., City of Columbus police officers were dispatched to the area of 1500 Polaris Parkway, in Delaware County, on report of a shooting. (T. at 141-142). Upon arrival, officers located the crime scene inside and outside of the Carter's retail store. Multiple interviews were conducted and multiple video sources capturing the incident were reviewed. (T. at 322-325).

**{¶5}** The video footage showed that Appellant Levon Sommerville entered the Carter's store with a young woman later identified as Zebie Jackson. Ms. Jackson's former boyfriend and father of her child, Anthony Truss, and a friend were also shopping inside the Polaris Fashion Place mall, along with the friend's child. At some point, Truss approached Sommerville and Jackson. Truss picked-up his child and showed the baby to some relatives that were with him. Truss then put the baby back in the carriage and the two groups continued to separately browse the same store.

**{¶6}** After a few minutes, Truss approached Jackson again and attempted to take the carriage with the child inside it. An argument ensued over whether Truss could have custody of the baby that day. From the video surveillance footage provided to the trial

court, it appears that words were exchanged and the parties both seem to be agitated. Next, Sommerville pulled Jackson behind him and withdrew a firearm from his jacket pocket. The two men continue to verbally jab for about ten seconds before Sommerville pushed Truss. Truss then lunged forward and the pair scuffled. Sommerville withdraws backwards, eventually falling to the ground with the firearm still in hand. While falling backwards, Sommerville is seen pointing the firearm upward in the area of where Truss is standing. Sommerville fired one gunshot. Sommerville then turns his back and slowly walks out of the store. Sommerville is seen on camera footage simply walking away through the main aisle ways of Polaris Fashion Place with his back towards the entrance of the store. A short time later, Truss is seen withdrawing his own firearm and quickly walking through the store with the firearm at his side. Truss exits the store. When Truss sees Sommerville, he shoots at least four times in the direction of Sommerville. This occurred in the main walkway of Polaris Fashion Place where a handful of other shoppers were located. Truss and Sommerville both run in opposite directions and exit the mall.

{¶7} After exiting the mall area, Sommerville tossed his handgun under a vehicle in the South parking lot of the mall. (T. at 187-190). Westerville police assisting on the scene located a handgun in the parking lot. *Id.* The recovered firearm had a live round in the chamber. *Id.*

{¶8} Both Sommerville and Truss fled to the state of Georgia and were arrested a month later. (T. at 352-353). Both eventually gave statements, each claiming they were acting in self-defense.

{¶9} Upon arriving back in Ohio, Sommerville was interviewed at the Delaware County Sheriff's office. (T. at 354). This interview took place on May 3, 2021. During the interview, Sommerville described the incident and stated "[a]nd that when the gun went off, I was handing the gun over to my baby girl." *Id.* "I wasn't even going to shoot". Id. Appellant also remarked "I remember he hit me first; that's when I shot. When I fell, I leaned back and tried to shoot, but it went off. I ain't really even trying to shoot; it just went off." *Id.*

{¶10} In his interview, Sommerville admitted that he was the person in the video firing the shot in the Carter's store. He also admitted to hiding the gun underneath the car and fleeing to Georgia. (T. at 359). He admitted to knowledge that he was under a disability prohibiting him from possessing a firearm at the time of the events. *Id.* He also admitted that Truss did not have his gun out at the time that he took out his weapon. (T at 449). He admitted that Truss did not threaten him prior to the time that he pushed him. (T. at 450). He also admitted that the incident which gave rise to him pulling out his gun was not serious. (T. at 489).

{¶11} In April 2021, Truss and Sommerville were jointly indicted for attempted murder in violation of R.C. §2923.02, a first-degree felony; felonious assault with a deadly weapon in violation of R.C. §2903.11(A)(2), a second-degree felony; and inducing panic in violation of R.C. §2917.31(A)(3), a third-degree felony. Each count included a firearm-use specification under R.C. §2941.145. Additionally, Sommerville was separately charged with having a weapon while under disability in violation of R.C. §2923.13, a third-degree felony.

{¶12} Appellant waived his right to a jury trial, and a bench trial commenced on September 14, 2021, and continued for two days.

{¶13} At trial, the court heard testimony from a number of witnesses, including Zebie Jackson and Detective Federer. The court also had before it the surveillance video from the store and the mall and the audio/video of Sommerville's interview with Det. Federer.

{¶14} Appellant claimed he acted in self-defense.

{¶15} At the conclusion of the trial, the court returned a verdict of guilty on the charges of felonious assault with the attached firearm specification, having weapons under disability, and a lesser included offense of inducing panic, a first-degree misdemeanor. The trial court returned a verdict of not guilty on the count of attempted murder.

{¶16} On October 18, 2021, the trial court held a sentencing hearing. The court sentenced Appellant to an indefinite prison term of 8 to 12 years on the felonious assault charge, plus an additional three-year term for the firearm specification and a definite prison term of 24 months on the charge of having a weapon while under disability. The sentences for the felonious assault charge and the having a weapon while under disability charge were ordered to run consecutive to each other and consecutive to the sentence for the firearm specification. The sentence for inducing panic was ordered to run concurrent to the other sentences. The total aggregate term imposed was 13 to 17 years in prison.

**{¶17}** Appellant was also sentenced to an additional 500 consecutive days pursuant to R.C. §2929.141(A)(1) for committing this offense while under post-release control.

**{¶18}** Appellant now appeals, assigning the following errors for review.

### ASSIGNMENTS OF ERROR

**{¶19}** "I. SOMMERVILLE'S TRIAL COUNSEL WAS INEFFECTIVE WITH RESULTING PREJUDICE, FOR FAILING TO SEEK SUPPRESSION OF SOMMERVILLE'S INTERVIEW UNDER THE SIXTH AMENDMENT, WITH RESULTING PREJUDICE.

**{¶20}** "II. THE STATE'S EVIDENCE THAT SOMMERVILLE COMMITTED FELONIOUS ASSAULT AND DID NOT ACT IN SELF-DEFENSE OR DEFENSE OF OTHERS WAS LEGALLY INSUFFICIENT, REQUIRING REVERSAL OF SOMMERVILLE'S CONVICTION.

**{¶21}** "III. SOMMERVILLE'S CONVICTION SHOULD BE REVERSED BECAUSE THE EVIDENCE WEIGHED MANIFESTLY AGAINST CONVICTING HIM OF FELONIOUS ASSAULT."

### I.

**{¶22}** In his first assignment of error, Appellant argues that he received ineffective assistance of counsel at trial. We disagree.

**{¶23}** A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard

of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694. In other words, Appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

**{¶24}** Appellant argues that his counsel was ineffective in failing to file a motion to suppress the statements he made in his interview to police under the Sixth Amendment. Appellant argues that because he was already under arrest at the time of the interview, he was guaranteed the right to legal counsel. Appellant further argues that his right to counsel attached because legal counsel was appointed while his interview with the police was taking place.

**{¶25}** Initially, we note that a trial counsel's failure to file a suppression motion does not *per se* constitute ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). Counsel can only be found ineffective for failing to file a motion to suppress if, based on the record, the motion would have been granted. *State v. Lavelle*, 5th Dist. No. 07 CA 130, 2008-Ohio-3119, 2008 WL 2571700, at ¶ 47; *State v. Cheatam*, 5th Dist. No. 06-CA-88, 2007-Ohio-3009, 2007 WL 1731619, at ¶ 86.

**{¶26}** Here, upon review of the record, we find that Appellant had been read his Miranda warnings and acknowledged and waived those rights prior to speaking with Detective Federer.

**{¶27}** In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court outlined procedural safeguards needed for securing the privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution. "*Miranda* requires police to give a suspect certain prescribed warnings before custodial interrogation commences and provides that if the warnings are not given, any statements elicited from the suspect through police interrogation in that circumstance must be suppressed." *State v. Petitjean*, 140 Ohio App.3d 517, 523, 748 N.E.2d 133 (2d Dist.2000). "If a suspect provides responses while in custody without having first been informed of his or her *Miranda* rights, the responses may not be admitted at trial as evidence of guilt." *Cleveland v. Oles*, 152 Ohio St. 3d 1, 2017-Ohio-5834, 92 N.E.3d 810, ¶ 9, citing *Miranda* at 479, 86 S.Ct. 1602. Furthermore, if, after *Miranda* warnings are given, the suspect indicates that he or she wishes to remain silent, or if the suspect states that he or she wants an attorney, the interrogation must cease. *Maryland v. Shatzer*, 559 U.S. 98, 104, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010).

**{¶28}** "When a suspect invokes his right to counsel, police officers must cease interrogation until counsel is present." *State v. Adams*, 144 Ohio St. 3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 171, citing *Edwards v. Arizona*, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). "A request for an attorney must be clear and unambiguous such that a reasonable police officer in the circumstances would understand the statement to be an invocation of the right to counsel." *State v. Hatten*, 186 Ohio App.3d

286, 2010-Ohio-499, 927 N.E.2d 632, ¶ 57 (2d Dist.), citing *Davis*, 512 U.S. at 459, 114 S.Ct. 2350, 129 L.Ed.2d 362. "If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." *Davis* at 461-62, 114 S.Ct. 2350. Whether a suspect has unequivocally invoked his right to counsel is an objective inquiry. *State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, 75 N.E.3d 1185, ¶ 37, citing *Davis* at 459, 114 S.Ct. 2350.

{¶29} Nowhere during his interview with the detective does Appellant state that he wants an attorney or that he wished to remain silent.

{¶30} Further, neither Appellant nor Detective Federer were aware that an Entry Appointing Counsel was executed elsewhere while the interview was being conducted, and trial counsel did not file his Notice of Appearance of Counsel until the following day.

{¶31} We further find that having the interview played at trial, rather than suppressed, could have been counsel's trial strategy as it allowed for Appellant to put forth his self-defense claim without taking the witness stand and being subject to cross-examination.

{¶32} Based on the foregoing, we do not find that counsel was ineffective in failing to file a motion to suppress in this matter or that prejudice resulted therefrom.

{¶33} Appellant's first assignment of error is overruled.

## II., III.

{¶34} In his second and third assignments of error, Appellant argues that his conviction for felonious assault was against the manifest weight and sufficiency of the evidence. We disagree.

*Sufficiency of the Evidence*

**{¶35}** On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶36}** Appellant herein was charged and convicted of Felonious Assault, pursuant to R.C. §2903.11(A)(2), which states:

> (A) No person shall knowingly do either of the following:
>
> ***
>
> (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

**{¶37}** At trial, the state presented evidence through testimony and video that Appellant fired a gun at Anthony Truss during an altercation between to the two men.

*Self-Defense*

**{¶38}** A defendant claiming self-defense concedes that he had the purpose to commit the act, but asserts that he was justified in his actions. *State v. Davis*, 8th Dist. Cuyahoga No. 109890, 2021-Ohio-2311, 2021 WL 2838407, ¶38. "By its terms, self-defense presumes intentional, willful use of force to repel force or to escape force." *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, 2013 WL 3341171, ¶54. Self-defense is a "confession and avoidance" defense in which appellant admits the

elements of the crime but seeks to prove some additional element that absolves him of guilt. *State v. White*, 4th Dist. Ross No. 97 CA 2282, 1998 WL 10226 (Jan. 14, 1998).

**{¶39}** Under a theory of self-defense, the defendant claims that (1) he was not at fault in creating the situation giving rise to the affray; (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) he did not violate any duty to retreat or avoid the danger. *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus. If the evidence tends to support that the defendant acted in self-defense, then the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense. R.C. §2901.05(B)(1). *State v. Gatewood,* 1st Dist., 2021-Ohio-3325, 177 N.E.3d 693, ¶ 68. The state need only disprove one of the elements of self-defense beyond a reasonable doubt at trial to sustain its burden. *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986). *Accord, State v. Carney,* 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, 2020 WL 2042924, ¶31; *State v. Staats,* 5th Dist. Stark No. 2019CA00181, 2021 WL 1502535, ¶ 28.

**{¶40}** Here, Appellant argues both that he accidentally discharged the firearm as he was falling backwards and also that he acted in self-defense of himself and Ms. Jackson.

**{¶41}** Appellant, during his interview, made conflicting statements to Det. Federer as to whether he was in fear. He told the detective that Truss did not threaten him prior to the time that he pushed Appellant and also stated that the confrontation which led to him pulling out his gun was not serious. (T. at 450, 489). He explained that "[a]nd that when the gun went off, I was handing the gun over to my baby girl." *Id.* "I wasn't even

going to shoot". *Id.* Appellant also remarked "I remember he hit me first; that's when I shot. When I fell, I leaned back and tried to shoot, but it went off. I ain't really even trying to shoot; it just went off." (T. at 354).

{¶42} Ms. Jackson testified that Truss was not angry with her she was not in danger of death or great bodily harm. (T. at 63-66). She testified that it was Appellant who began the physical altercation between the two men by pushing Truss. (T. at 65-66).

{¶43} Here, Appellant does not claim that he was in fear for his life, and nothing prevented him from fleeing the scene rather than firing his weapon at Truss. Thus, the trier of fact could find that Appellant used more force than necessary to meet the perceived threat.

{¶44} The trial court also had before it the video of the event as it happened and was able to see for itself how the events transpired.

{¶45} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Appellant did not have a bona fide belief that he was in imminent danger of death or great bodily harm, that his only means of escape from such danger was in the use of such force, that Appellant was at fault for creating the circumstances that resulted in the charge of felonious assault, and/or that Appellant's use of force was disproportionate to the perceived danger.

{¶46} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime of felonious assault for which Appellant was convicted

*Manifest Weight of the Evidence*

**{¶47}** On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also, State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

**{¶48}** The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, 2008 WL 1061793, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, 2002 WL 407847, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the

record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, 2012 WL 1029466, ¶ 24.

**{¶49}** An appellate court may not merely substitute its view for that of the trier of fact, but must find that " 'the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins, supra*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶50}** The trial court as the trier of fact herein was free to accept or reject any and all of the evidence offered by the parties and assess the witness' credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, 2003 WL 723225, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, 2003 WL 21291042, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).

**{¶51}** The trial court heard the witnesses subjected to cross-examination. The court heard Appellant's admissions made during his interview with the police. The court

saw the video of the incident as it occurred in real time. The court heard Appellant's attorney's arguments and explanations about the evidence and his actions. Thus, a rational basis exists in the record for the trial court's decision.

**{¶52}** Upon review, we find that this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668*, quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Appellant's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the trial court appears to have fairly and impartially decided the matters before it. The court heard the witnesses, evaluated the evidence, and was convinced of Appellant's guilt. The court rejected Appellant's claim that he acted in self-defense. The court neither lost its way nor created a miscarriage of justice in convicting Appellant of the offense of felonious assault.

**{¶53}** Appellant's second and third assignments of error are overruled.

**{¶54}** For the forgoing reasons, the judgment of the Court of Common Pleas, Delaware County, Ohio, is affirmed.

By: Wise, J.

Hoffman, P. J., and

Baldwin, J., concur.

JWW/kw 1115