[Cite as *State v. Anderson*, 2026-Ohio-425.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 24 CAA 12 0110 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Court of Common Pleas, Case No. 24 CRI 04 0246 |
| RAYSHAWN ANDERSON | Judgment: Affirmed |
| Defendant – Appellant | Date of Judgment Entry: February 9, 2026 |

**BEFORE:** Andrew J. King; Robert G. Montgomery; Kevin W. Popham, Appellate Judges

**APPEARANCES:** MELISSA A. SCHIFFEL, KATHERYN L. MUNGER, for Plaintiff-Appellee; SAMUEL H. SHAMANSKY, DONALD L. REGENSBURGER, ASHTON C. GAITANOS, for Defendant-Appellant.

*King, P.J.*

{¶ 1}   Defendant-Appellant Rayshawn Lamont Anderson appeals the November 27, 2024 judgment of conviction and sentence of the Delaware County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

**Facts and Procedural History**

The Shooting

{¶ 2}   The events herein took place at 23 Ross Street in Delaware, Ohio. The residence was home to the victim in this matter, Alonzo Byrd. Byrd lived there with his girlfriend A.S., her daughter F.S and her boyfriend B.M. A.S. was Anderson's

grandfather's ex-wife. Anderson's mother, T.J. is F.S.'s stepsister. At the time of the events herein, the families had a strained relationship.

{¶ 3}   On the afternoon of March 8, 2024, 17-year old Anderson showed up at 23 Ross Street. Anderson was not supposed to be at the residence that day due to a pending juvenile adjudication alleging that two months prior he had assaulted F.S. and damaged her car by throwing a rock through the windshield. Anderson had therefore been ordered to avoid contact with F.S. That afternoon, a neighbor, J.F. was outside doing yardwork when he noticed Anderson walking slowly up Ross Street. J.F. recognized Anderson because he had witnessed the January incident between Anderson and F.S. J.F. went inside soon after he saw Anderson.

{¶ 4}   Anderson was across the street from 23 Ross Street when Byrd arrived home shortly before 4:00 p.m. and pulled into the driveway. Byrd got out of his car with papers in one hand and a coffee tumbler in the other. He noticed Anderson and told him he needed to leave because he was not permitted to be there. Anderson called Byrd a "snitch" and made other disparaging comments. F.S., who was inside at the time, heard what was going on. When Anderson failed to leave as Byrd requested, she called 911 and reported her nephew was outside the home causing trouble and was not supposed to be there. Seconds later, she heard gunshots.

{¶ 5}   Just before F.S. called 911, B.M. heard Anderson outside telling Byrd he was a snitch and stepped outside. He saw Anderson on the opposite side of the street and Byrd in the middle of the yard. When Byrd walked to the middle of the street B.M. told Byrd not to approach Anderson because he could have a gun. Byrd looked back toward B.M. as he spoke. As he did, Anderson pulled a gun and without warning, shot Byrd. Byrd

went down on the first shot, but Anderson continued shooting while standing over Byrd's body. After firing five rounds, four to Byrd's chest and one to his back, Anderson fled the scene. Byrd still had the papers and tumbler in his hands when he was shot. Police arrived at the scene within 90 seconds and rendered aid, however, Byrd died of his injuries at the scene.

{¶ 6} Anderson was later taken into custody at his home. The gun used to kill Byrd was recovered from his home.

## The Charges

{¶ 7} As a result of these events, on April 24, 2024, following bind-over proceedings in the juvenile court, the Delaware County Grand Jury returned an indictment charging Anderson as follows:

{¶ 8} Count one, aggravated murder, with a 3-year firearm specification.

{¶ 9} Count two, murder, with a 3-year firearm specification.

{¶ 10} Count three, felony murder, with a 3-year firearm specification.

{¶ 11} Count four, discharge of a firearm on or near prohibited premises, with a 3-year firearm specification.

{¶ 12} Count five, tampering with evidence.

## Relevant Pretrial Motions

{¶ 13} On June 2, 2024, Anderson filed a notice of self-defense.

{¶ 14} On September 15, 2024, Anderson filed a motion in limine related to a statement he made to another youth while being held at the Central Ohio Youth Center (COYC). The statement was overheard by a corrections officer that the State intended to call at trial. Due to a rule forbidding youths from talking about their charges with others,

the corrections officer immediately made a written incident report. The report indicated the officer heard several youth discussing their charges and Anderson stating "the only reason I shot him was because he would not shut up." Anderson's motion argued that due to COYC policy, Anderson was unable to receive the names of the other juveniles involved in the conversation in order to subpoena them and potentially refute what the corrections officer overheard. Anderson argued that since he could not corroborate his alleged statement, the State should be not be permitted to admit the statement at trial pursuant to Evid.R. 403(A) as it was unfairly prejudicial to him. In a judgment entry issued on September 27, 2024, the trial court ruled on Anderson's motion in limine finding Anderson's statement to other youth was admissible and that Anderson's recourse was cross examination of the corrections officer who heard the statement.

{¶ 15} On September 20, 2024, the State filed a notice of intent to present other acts evidence. Specifically, the State sought to introduce evidence of the ongoing feud between Anderson and residents living at 23 Ross Street, and the fact that Anderson was to have no contact with F.S. due to the pending juvenile adjudication. The State argued it sought to use the evidence for non-propensity purposes including that it provided context to the events in this matter, was evidence of prior calculation and design, intent, and motive. During a later pretrial, the trial court permitted admission of the evidence with some limitations, and the promise of a limiting instruction.

Trial, Convictions, and Sentence

{¶ 16} Anderson's seven-day jury trial began on October 15, 2024. Immediately before trial, the State dismissed count five, tampering with evidence.

{¶ 17} During trial the State elicited the above outlined facts. Anderson presented testimony from his probation officer who he had seen the same afternoon as the shooting, and he testified on his own behalf.

{¶ 18} Anderson testified that on the day of the murder, he had a hearing at the juvenile court pertaining to the incident with F.S. Afterwards he alleged he went to the Ross Street residence to retrieve some personal belongings, but acknowledged he was not to have contact with F.S. He stated he routinely carried a gun for self-defense and acted in self-defense on the day in question because Byrd was reaching toward his waistband for what Anderson presumed was a gun. He stated he continued to shoot Byrd because Byrd continued to reach for his waistband after he was on the ground. As for the statement overheard by the corrections officer, Anderson testified he was talking about an uncle's case, not his own.

{¶ 19} After hearing the evidence and deliberating, the jury acquitted Anderson of aggravated murder, but convicted him of the remaining charges. Anderson was subsequently sentenced to an aggregate prison term of 27 years to life.

{¶ 20} Anderson timely filed an appeal and the matter is now before this court for consideration. He raises four assignments of error as follows:

I

{¶ 21} "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION."

II

{¶ 22} "THE STATE'S FAILURE TO OBTAIN OR PRESERVE POTENTIALLY EXCULPATORY EVIDENCE VIOLATED APPELLANT'S RIGHT TO DUE PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION."

III

{¶ 23} "THE TRIAL COURT ERRED BY ALLOWING THE STATE TO ELICIT TESTIMONY CONCERNING "BAD ACTS" IN THE ABSENCE OF ANY PERMISSIBLE PURPOSE UNDER EVID.R. 404(B)."

IV

{¶ 24} "THE TRIAL COURT ERRED BY NOT ORDERING A MISTRIAL WHEN THE STATE ENGAGES IN PROSECUTORIAL MISCONDUCT BY COMMENTING UPON APPELLANT'S POST-*MIRANDA* SILENCE."

I

{¶ 25} In his first assignment of error, Anderson argues his convictions for murder are against the manifest weight of the evidence because he acted in self-defense. We disagree.

Standard of Review and Applicable Law

{¶ 26} The state's burden of disproving a defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight review on appeal. *State v. Messenger*, 2022-Ohio-4562 ¶27.

{¶ 27}  On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of

witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 28} R.C. 2901.05(B)(1) provides:

> (B)(1) A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶ 29} The defendant has the initial burden of production, which is the burden of producing evidence "that tends to support" that the defendant used force in self-defense. *State v. Messenger,* 2022-Ohio-4562, ¶ 21. The burden then shifts to the state under its burden of persuasion to prove beyond a reasonable doubt that the defendant did not use the force in self-defense. *Id.* at ¶ 24. In other words, if the evidence tends to support that

the defendant acted in self-defense, then the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense. *Id.* at ¶26; *State v. Gatewood,* 2021-Ohio-3325, ¶ 68 (1st Dist.)*.* The state need only disprove one of the elements of self-defense beyond a reasonable doubt at trial to sustain its burden. *State v. Jackson,* 22 Ohio St.3d 281, 284 (1986). Accord, *State v. Staats,* 2021-Ohio-1325 ¶ 28 (5th Dist.).

{¶ 30} The state was required to disprove at least one of the following: 1) Anderson was not at fault in creating the situation giving rise to the affray, 2) Anderson had reasonable grounds to believe and an honest belief even if mistaken that he was in imminent danger of death or great bodily harm and that he did not use more force than necessary to defend against the attack and 3) Anderson must not have violated any duty to retreat or avoid the danger. *State v. Robbins*, 58 Ohio St.2d 74, 79 (1979) (citations omitted).

Analysis

{¶ 31} While Anderson had no duty to retreat pursuant to Ohio's "stand your ground" law, the State produced sufficient evidence to disprove the remaining two elements.

{¶ 32} First, Anderson was at fault for creating the situation giving rise to the affray. The jury heard evidence that a strained and volatile relationship existed between the parties including a January 2024 incident wherein Anderson tried to start a fight with B.M., struck F.S., and had caused property damage to her car. T.  401-403. As a result, a complaint was filed against Anderson in the juvenile court which in turn resulted in an interim order that he was to "have no avoidable contact with [F.S.]." State's Exhibit 105.

Yet on March 8, 2024, Anderson went back to her home, stood across the street, and engaged Byrd when he arrived home by calling him a "snitch" and yelling other insults. He then failed to leave as Byrd requested. Transcript of trial (T.) 529, 534, 1292. "A defendant, having willingly advanced toward a volatile situation cannot rely on the affirmative defense of self-defense." *State v. Walker*, 2021-Ohio-2037, ¶ 19 (8th Dist.).

{¶ 33} Second, the evidence demonstrated Anderson was not in any imminent danger of great bodily harm and that he used more force than was necessary to defend himself from any perceived threat. Anderson shot Byrd five times, including four times after Byrd was on the ground. While Anderson testified Byrd was reaching toward his waistband as if to grab a weapon, B.M. witnessed the incident and testified Byrd's hands were full. He stated Byrd had a coffee tumbler in one hand and a stack of papers in the other. T. 542-543. Contrary to Anderson's testimony that Byrd lunged at him, B.M. additionally testified that Byrd was looking back towards him and standing sideways to Anderson when Anderson fired the first shot. T. 535, 537, 1305. After the first shot Byrd asked B.M. to help him. T. 538. B.M. testified that due to the direction Byrd was standing in the street, he believed the first shot was to Byrd's side. T. 537. The coroner's findings detailed one gunshot entry wound to Byrd's back and four to his chest.

{¶ 34} Delaware City Police Officer Lucas was first on the scene, having arrived roughly 90 seconds after the shooting. Lucas' body camera video corroborates B.M.'s testimony as it shows Byrd lying on his back in the road with the papers and tumbler scattered around him. State's Exhibit 3 at :58, T. 353, 364, 370. No gun was found on or near Byrd's body. T. 364. While Anderson testified Byrd put the items in his hands down by a basketball hoop on the tree lawn before stepping into the middle of the street, Lucas's

body camera video disproved Anderson's testimony. T. 1303. Crime scene investigators collected the items from around Byrd's body. T. 588.

{¶ 35} Next, a corrections officer from COYC testified he heard Anderson talking to other youth about his case. In response to another youth asking why Anderson shot Byrd, Anderson replied "the only reason I shot him was because he wouldn't shut up." State's Exhibit 84, T. 852. While Anderson testified at trial that he was talking about his uncle's case rather than his own, Anderson's credibility was a matter for the jury to determine. T. 1315. To that end, the jury also heard phone calls representing Anderson's changing story. Anderson made calls to his girlfriend from jail wherein he first wondered aloud who shot Byrd. In a later phone call to his girlfriend, Anderson stated his mother had talked to him about self-defense, that he had acted in self-defense when he shot Byrd, and therefore what he had done was legal. State's exhibits 137 and 138.

{¶ 36} Finally, while Anderson argues he testified he feared Byrd, and that Byrd allegedly lunged at him, again, Anderson's credibility was within the province of the jury to determine.

{¶ 37} Upon review of the entire record, we find this is not an exceptional case in which the evidence weighs heavily against a conviction, and the jury did not lose its way in rejecting Anderson's self-defense claim and finding him guilty of two counts of murder. Indeed, the jury appears to have weighed the evidence carefully before reaching a verdict as it acquitted Anderson of aggravated murder, rejecting the State's theory of prior calculation and design. Accordingly, the first assignment of error is overruled.

## II

{¶ 38} In his second assignment of error, Anderson argues his right to due process was violated when the state committed a *Brady* violation by failing to obtain or preserve the names of other juveniles present when Anderson made an incriminating statement while in custody at the COYC. We disagree.

### *Brady v. Maryland*

{¶ 39} Under *Brady v. Maryland*, 373 U.S. 83 (1963), the state violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment. *In re P.K.*, 2019-Ohio-2311, ¶ 11 (5th Dist.) citing *Brady*, 373 U.S. 83, 87, 83 (1963). The United States Supreme Court has explained, "evidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-470 (2009).

{¶ 40} The rule announced in *Brady* applies to post-trial discovery of information that was known to the state but unknown to the defense. *United States v. Agurs*, 427 U.S. 97, 103 (1976). We note that in *State v. Wickline*, 50 Ohio St.3d 114 (1990), the Supreme Court of Ohio rejected a claim that the state's failure to provide exculpatory information to the defendant before trial was a reversible *Brady* violation because the alleged exculpatory records were presented during trial. Therefore, no *Brady* violation occurred. *Id.* at 116.

### Anderson's Argument

{¶ 41} Anderson argues the State "went out of its way" to ensure he was deprived of any opportunity to identify the youth present for the conversation and who may have

contradicted the report and testimony of the corrections officer. Appellant's brief at 16. Yet Anderson was personally aware of the information he accuses the State of failing to provide as he was present for the conversation. Moreover, the conversation took place before trial. *Brady* is therefore inapplicable to Anderson's complaint.

{¶ 42} The second assignment of error is overruled.

III

{¶ 43} In his third assignment of error, Anderson argues the trial court erred when it permitted the State to elicit evidence of prior bad acts, specifically evidence that he had assaulted F.S. and thrown a rock through her windshield two months before again showing up to the residence and shooting Byrd. We disagree.

Evid.R. 404(B)

{¶ 44} Anderson argues evidence that he had assaulted F.S. was improperly admitted as a prior bad act pursuant to Evid.R. 404(B). That rule states:

> (B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause

shown, of the general nature of any such evidence it intends to introduce at trial.

{¶ 45} In *State v. Williams*, 2012-Ohio-5695, ¶ 20, the Supreme Court of Ohio set forth a three-part analysis for determining the admissibility of other-acts evidence. In order to be admissible, (1) the evidence must be relevant, (2) the evidence cannot be presented to prove a person's character to show conduct in conformity therewith but must instead be presented for a legitimate other purpose, and (3) the probative value of the evidence cannot be substantially outweighed by the danger of unfair prejudice.

{¶ 46} The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law which is reviewed de novo. *State v. Hartman*, 2020-Ohio-4440, ¶20. While a trial court is precluded from admitting improper character evidence under Evid.R. 404(B), it has discretion to allow other-acts evidence which is admissible for a permissible purpose. *Hartman* at ¶ 22, citing *Williams* at ¶ 17. The *Hartman* court noted the key of a 404(B) analysis "is that the evidence must prove something other than the defendant's disposition to commit certain acts." *Hartman* ¶ 25.

The Trial Court Properly Permitted 404(B) Evidence

{¶ 47} Here, the history between Anderson and the residents of 23 Ross Street was relevant evidence of something other than Anderson's disposition to commit certain acts. It was relevant evidence of prior calculation and design. The State's theory of the case was that Anderson went to a court hearing regarding the previous incident, was angry as a result, went home to get a gun and proceeded to 23 Ross Street with the intent to harm someone at the Ross Street residence. T. 331-334.

{¶ 48} "Unfairly prejudicial evidence is that which might result in an improper basis for a verdict." *State v. Cooper*, 2002-Ohio-617, ¶ 57 (12th Dist.). Here, the probative value of the previous incident outweighed any prejudice to Anderson. The events of January 9, 2024 provided background and context to the events of March 8, 2024 and made Anderson's actions on March 8, 2024 more understandable to jurors. *State v. Skatzes*, 2004-Ohio-6391, ¶ 113 (background information is admissible "to make the actions of the participants understandable to the jurors" and observing that crimes do not occur "in a vacuum"). It further supported the element of prior calculation and design based on the State's theory of the case. To ensure its proper use of the January 2024 incident, the trial court provided the jury with a limiting instruction as to how it could use the evidence. T. 1563. Jurors are presumed to follow a trial court's instructions. *State v. Loza*, 71 Ohio St.3d 61, 75 (1994)

{¶ 49} But even if we were to assume, arguendo, that the trial court erred in introducing the other-acts evidence, the error would be harmless as there is no reasonable possibility that the testimony contributed to Anderson's conviction; the jury acquitted Anderson of aggravated murder and Anderson admitted he killed Byrd, albeit in self-defense.

{¶ 50} The third assignment of error is overruled.

IV

{¶ 51} In his final assignment of error, Anderson makes two separate arguments. He first argues the trial court erred when it failed to declare a mistrial after the State commented on his post-Miranda silence during cross-examination of Anderson. He then argues the State committed prosecutorial misconduct by so commenting. We disagree.

Applicable Law

{¶ 52} The declaration of a mistrial is an extreme remedy and the granting of a mistrial lies within the sound discretion of the trial court. *State v. Trimble*, 122 Ohio St.3d 2009-Ohio-2961. "Abuse of discretion" means an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc*., 19 Ohio St.3d 83, 87 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Ent., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161 (1990). An unreasonable decision is one backed by no sound reasoning process that would support that decision. *Id.* "It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶ 53} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. *State v. Lott*, 51 Ohio St.3d 160 (1990). In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168 (1986).

Analysis

{¶ 54} We first note that Anderson's final assignment of error fails to comply with App.R. 16(A)(7) as he provides no citation—to the more than 1600-page transcript— wherein he moved for a mistrial on this issue. "It is the duty of the appellant, not this court, to demonstrate [his] assigned error through an argument that is supported by citations to

legal authority and facts in the record." *State v. Taylor*, 1999 Ohio App. LEXIS 397 (9th Dist.), App.R. 16(A)(7). "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Kremer v. Cox*, 114 Ohio App.3d 41, 60 (9th Dist.1996).

{¶ 55} The federal courts have discussed the problems resulting when a party omits important information in its appellate brief noting; "[c]ourts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through the assembled discovery material. 'Judges are not like pigs, hunting for truffles buried in the record.' " *Albrechtsen v. Bd. of Regents*, 309 F.3d 433(C.A.7, 2002), quoting *United States v. Dunkel*, 927 F.2d 955, 956(C.A.7, 1991). The Supreme Court of Ohio, in *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 12006-Ohio-903, at ¶ 13; has also noted:

> The omission of page references to the relevant portions of the record that support the brief's factual assertions is most troubling. Appellate attorneys should not expect the court "to peruse the record without the help of pinpoint citations" to the record. *Day v. N. Indiana Pub. Serv. Corp.* (C.A.7, 1999), 164 F.3d 382, 384 (imposing a public reprimand and a $500 fine on an attorney for repeated noncompliance with court rules). In the absence of the page references that S.Ct. Prac.R. VI(2)(B)(3) requires, the court is forced

to spend much more time hunting through the record to confirm even the most minor factual details to decide the case and prepare an opinion. That burden ought to fall on the parties rather than the court, for the parties are presumably familiar with the record and should be able to readily identify in their briefs where each relevant fact can be verified.

{¶ 56} In our own examination of the record, we find no motion for a mistrial related to the State's questioning of Anderson. We are left to presume Anderson argues the trial court should have sua sponte ordered a mistrial.

{¶ 57} "A trial court may grant a mistrial sua sponte when there is manifest necessity for the mistrial or when 'the ends of public justice would otherwise be defeated.'" *Cleveland v. Walters*, 98 Ohio App.3d 165, 168 (8th Dist.1994). If no motion for a mistrial is requested at trial, the failure to grant a mistrial sua sponte is judged under a plain error standard. *State v. Jones*, 115 Ohio App.3d 204, 207 (7th Dist.1996).

{¶ 58} Under the plain error standard of review, the defendant bears the burden of "showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." *State v. West*, 2022-Ohio-1556, ¶22. An appellate court has discretion to notice plain error and is not required to correct it. *Id.*

{¶ 59} Anderson has failed to raise or argue plain error. We note that the question Anderson takes issue with pertained to the State attempting to impeach Anderson by essentially asking why he did not mention self-defense as soon as he was arrested. T.

1373-1374. Following the question, counsel for Anderson asked to approach and the trial court took a break to address counsel's concern. Counsel for Anderson argued the question went to Anderson's post-Mirada silence. The State argued Anderson continued to talk to officers despite receiving his Miranda warnings, and did not invoke his rights until he was booked. The trial court agreed with counsel for Anderson and the following day proposed the following instruction to the jury:

> We heard testimony yesterday from Mr. Anderson that he did not provide information to the police about self-defense or about his role, if any, in the shooting at issue in this case. You're instructed that you are not permitted to consider for any purpose Mr. Anderson's silence about the alleged crimes in the presence of police or his failure to explain to the police what happened on March 8th.
>
> The Defendant had after he was arrested a constitutional right to remain silent and that silence in the presence of police cannot be used either to support any argument that he is guilty of the crimes at issue in this case or that his testimony yesterday should not be believed by you. During your deliberations and in reaching your verdicts in this case, you are not to consider for any reason the defendant's silence in the presence of police.

{¶ 60} T. 1406-1407.

{¶ 61} Anderson lodged no objection to the instruction and it was provided to jurors in the charge. T. 1465-1466.

{¶ 62} Turning to prosecutorial misconduct, even if the prosecutor's questioning of Anderson was improper, Anderson cannot demonstrate he was prejudicially affected. The trial court provided a curative instruction which the jury is presumed to follow. Moreover, as stated above, the jury acquitted Anderson of the most serious count of the indictment, Anderson admitted he had killed Byrd, and the jury had other evidence of Anderson's changing story in the jail calls to his girlfriend. In short, the evidence against Anderson was overwhelming. We therefore find no prosecutorial misconduct nor fault on the part of the trial court in failing to sua sponte declare a mistrial.

{¶ 63} The final assignment of error is overruled.

{¶ 64} For the reasons stated in our accompanying Opinion, the judgment of the Delaware County Court of Common Pleas is affirmed.

{¶ 65} Costs to Appellant.


By: King, P.J.

Montgomery, J. and

Popham, J. concur.