COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Andrew J. King, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2023 CA 0046 |
| CLAUDE K. KNIPP | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:     Appeal from the Richland County Court of
                             Common Pleas, Case No. 22CR810 R

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      June 4, 2024

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JODIE SCHUMACHER                      WILLIAM T. CRAMER
Prosecuting Attorney                  470 Olde Worthington Road
BY: MEGAN HOBART                      Suite 200
Assistant Prosecutor                  Westerville, OH 43082
38 South Park Street, Second Floor
Mansfield, OH 44902

*Gwin, P.J.*

{¶1} In November 2022, defendant-appellant Claude Kerry Knipp ["Knipp"] drove his Jeep into his nephew, severely breaking the nephew's leg. Knipp argued that he was acting in self-defense. A jury rejected Knipp's self-defense claim and found Knipp guilty of two counts of felonious assault, the first under R.C. 2903.11(A)(2), for using a deadly weapon, namely a motor vehicle, and the second under R.C. 2903.11(A)(1), for causing serious physical harm. The issue presented in this appeal is whether the jury clearly lost their way and created such a manifest miscarriage of justice by rejecting his self-defense claim that his convictions must be reversed and a new trial ordered. We conclude they did not because under the facts presented Knipp's act of deliberately changing direction so that he could hit the unarmed victim was unwarranted under the circumstances and disproportionate to the perceived threat. Therefore, we affirm the judgment of the Richland County Court of Common Pleas.

*Facts and Procedural History*

**Sixty-Eight-Year-Old Knipp And His Forty-Eight-Year-Old Nephew Joshua Have a Falling Out**

{¶2} When Knipp moved to St. Louis, Missouri, he took his nephew with him to attempt to be his mentor. 3T. at 406; 409. Things began to sour between the pair when Joshua was arrested in St. Louis for statutory rape. 3T. at 409 - 410; 466. Joshua was not convicted of a crime. Knipp testified that his fiancé agreed not to press charges and Joshua was told to leave Missouri and never return. 3T. at 466. Joshua left St. Louis shortly after that, however, Knipp

remained in St. Louis until he retired from his job as a driver of a concrete truck. Id. at 407; 410. He then moved back to Mansfield around 2016 - 2017. Id. at 410.

## Joshua Beats Knipp to a Pulp

{¶3}   Joshua has two sons, ages eleven and thirteen. Joshua has had sole custody of them since 2015. Id. Joshua had been told that Knipp was having relations with the mother of Joshua's children and was attempting to interfere with Joshua's attempt to gain custody of them. 2T. at 67-69.

{¶4}   Joshua was granted a restraining order against Knipp that expired in September 2020. 2T. at 70 - 75. On April 23, 2020, Knipp drove past Joshua's home on his way to pick-up a friend to go out to breakfast. 3T. at 416. Joshua came outside cursing and threatening Knipp. Joshua hurled bricks at Knipp's vehicle. Id. at 418-419. The pair began to argue and threaten each other. Id. at 419-420. The verbal sparring descended into a physical fight that resulted in Joshua hitting Knipp in the face with a brick. 3T. at 420-421. The resulting injury caused serious, permanent damage to Knipp's right eye. Id. at 425-426. Knipp was charged with violating the restraining order as a result of this confrontation. Id. at 424. Joshua admitted that he beat Knipp to a pulp that day. 2T. at 76. Joshua denied injuring or even knowing about Knipp's injury, claiming instead that his grandmother told him that Knipp's eye was injured as a result of a childhood injury involving an exploding golf ball. 2T. at 146-147.

## The Incident and Its Aftermath

{¶5}   On November 5, 2022, Joshua woke up early and drove to the Corner Market by himself to get some items for breakfast. 2T. at 28. Knipp followed his morning

routine and drove to the Corner Market to get coffee and lottery tickets. 3T. at 428. Surveillance video from the store showed Knipp's vehicle pulling in as Joshua was exiting the store. 2T. at 230. Knipp never gets out of his vehicle; however, he rolls down the window. Upon seeing one another, the pair begin to exchange insults and threats. Knipp claimed that he had been told in the past that Joshua had been telling people that he had a bullet with Knipp's name on it. 3T. at 429; 446. Knipp testified that he last saw Joshua with a gun four or five years ago. Id. at 477- 478. It was a small revolver that Joshua hid in his crotch. Id. Knipp testified that Joshua was threatening his life, the lives of his grandchildren and further, was threatening to take his other eye.

{¶6} Knipp testified that Joshua got into his vehicle and got back out several times. 3T. at 430. When Knipp saw Joshua get into his vehicle he believed that Joshua was going to retrieve a gun. Id. at 435; 472. Knipp testified that he was so afraid he nearly urinated his pants. Id. at 434; 448. Knipp admitted that he never saw Joshua with a gun, or any type of weapon in his hands during the encounter. Id. at 445-446; 449 - 450; 453; 460; 470. However, Knipp testified that Joshua could have had a gun concealed in his crotch. Id. at 460- 461.

{¶7} Knipp admitted that he hit Joshua with his Jeep. 3T. at 442. Knipp stated he felt he had to attempt to "knock him [Joshua] on his ass so I could get out of there safely." 3T. at 442. Knipp believed that if he did not "take him out on his ass" it would be Knipp's last day on earth. Id. at 457. Knipp admitted that Joshua never charged his vehicle before Knipp drove into him. Id. at 456 - 457. Knipp admitted that Joshua was moving to the left of Knipp's Jeep when Knipp turned his wheels to the left and drove into him. Id. at 458-459. Knipp admitted that he could have driven to his left, gone straight or backed up and

exited the parking lot instead of hitting Joshua. 3T. at 462- 463. Knipp admitted telling a bystander that Joshua was a child molester before driving away. Id. at 462-465.

{¶8}    Because the surveillance videos the store provided to the police were of such a poor quality, Deputy Logan Dilley of the Mansfield Sherriff's Office took the department's county-issued digital camera back to the store and recorded the footage off the store's video monitor. 2T. at 292 – 293; 296. However, Deputy Dilley recorded only the portion of the video showing Knipp's Jeep hitting Joshua. Id. at 298; 334; 338 - 339. Surveillance video from the scene showed Joshua moving to his right and Knipp's Jeep turn toward Joshua before striking him. 2T. at 47- 49. Joshua's leg was broken. He required surgery to place ten pins and 118 staples. 2T. at 35-36.

{¶9}    A bystander followed Knipp home; however, when deputies went to the residence Knipp was not at home. Later that night they issued an arrest warrant. Knipp was arrested several days later at his house. 3T. at 350; 355.

{¶10}   At the close of evidence, the jury was instructed on self-defense. During deliberations the jury asked for an explanation of what it means to have an honest "even if mistaken" belief in the need to act in self-defense. 4T. at 616. The judge referred the jury to the plain meaning of the words. The jury also asked, "If words alone do not justify the use of force, what does? Physical touch, gestures, etc.?" The judge referred the jury back to the jury instructions. Id. at 616. The jury also asked for the difference between "imminent" and "immediate". Id. at 620. The judge provided the jury with dictionary definitions of each term. Id. at 620-632. After further deliberation, the jurors found Knipp guilty on both counts.

{¶11}  At sentencing on August 3, 2023, the parties agreed that the two counts merged and the state elected to proceed on Count Two felonious assault, causing serious physical harm. Sent. T., Aug. 1, 2023 at 640. Knipp was sentenced to five to seven and a half years imprisonment. Knipp was also sentenced to 18 months to three years of post-release control and $75,000 restitution. Six days of jail time credit was ordered to be applied to the sentence.

{¶12}  A restitution hearing was held on September 13, 2023. The judge noted that Joshua testified and admitted three exhibits in his quest to receive lost wages as restitution. The trial judge found that Joshua was not working at the time of the incident and had not worked in the fourteen months before the incident. The trial judge further found that Joshua did not offer any evidence other than his own self-serving testimony that he was planning to go back to work in November of 2023. The trial judge found that Joshua did not meet his burden to prove lost wages to a reasonable degree of certainty. The trial judge found therefore, that Joshua was not owed restitution by Knipp. The trial judge vacated the previous order of August 3, 2023 awarding Joshua $75,000.00 in restitution.

*Assignment of Error*

{¶13}  Knipp raises one Assignment of Error,

{¶14}  "I. THE WEIGHT OF THE EVIDENCE DOES NOT SUPPORT A FINDING THAT THE STATE DISPROVED SELF-DEFENSE BEYOND A REASONABLE DOUBT.

**Standard of Review**

{¶15}  As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the

evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387(1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89*; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001).

{¶16} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, *supra,* 78 Ohio St.3d at 386-387, *State v. Williams,* 2003-Ohio-4396, ¶83. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *State v. Jordan*, 2023-Ohio-3800; *Thompkins* at 387, *citing Tibbs v. Florida*, 457 U.S. 31, 42(1982) (quotation marks omitted); *State v. Wilson,* 2007-Ohio-2202, ¶25, citing *Thompkins.*

{¶17} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman,* 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). The central question is whether "there is *substantial* evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." (Emphasis sic.) *State v. Getsy*, 84 Ohio St.3d 180, 193-194(1998),

*citing State v. Eley*, 56 Ohio St.2d 169 (1978), syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89; State v. Nicholson,* 2024-Ohio-604, ¶ 71.

**{¶18}** Further, to reverse a jury verdict as being against the manifest weight of the evidence, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required pursuant to Article IV, Section 3(B)(3) of the Ohio Constitution. *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶ 2-4, *citing Thompkins* at paragraph four of the syllabus.

**Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered*

*Self-defense*

**{¶19}** When an accused asserts the defense of self-defense he does not seek to negate any of the elements of the offense which the state is required to prove. Self-defense is not merely a denial or contradiction of evidence offered by the state to prove the essential elements of the charged crime. Rather, it is an admission of the prohibited conduct coupled with a claim that the surrounding facts or circumstances exempt the accused from liability therefor— "justification for admitted conduct." *State v. Poole*, 33 Ohio St.2d 18 (1973); *State v. Watson,* 2023-Ohio-3137, ¶80 (5th Dist.).

**{¶20}** In order to determine the respective duties with respect to a self-defense claim, we must turn to R.C. 2901.05(B)(1),

> (B)(1) A person is allowed to act in self-defense, defense of another,
>
> or defense of that person's residence. If, at the trial of a person who is

accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶21}   Under R.C. 2901.05(B)(1) there are two burdens. *State v. Davidson-Dixon*, 8th 2021-Ohio-1485, (8th Dist.), ¶ 18; *State v. Paskins,* 2022-Ohio-4024, ¶ 49 (5th Dist.). The defendant has the initial burden of production, which is the burden of producing evidence "that tends to support" that the defendant used the force in self-defense. *State v. Messenger,* 2022-Ohio-4462, ¶ 21. The burden then shifts to the state under its burden of persuasion to prove beyond a reasonable doubt that the defendant did not use the force in self-defense. Id. at ¶ 24. In other words, if the evidence tends to support that the defendant acted in self-defense, then the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense. R.C. 2901.05(B)(1); Id. at ¶26; *Paskins,* at ¶49; *State v. Gatewood,* 2021-Ohio-3325 (1st Dist.), ¶ 68. The state need only disprove one of the elements of self-defense beyond a reasonable doubt at trial to sustain its burden. *State v. Jackson*, 22 Ohio St.3d 281, 284(1986); *Paskins* at ¶49. *State v. Carney,* 2020-Ohio-2691 (10th Dist.), ¶31; *State v. Staats,* 2021-Ohio-1325, ¶28 (5th Dist.).

{¶22}   At the close of Knipp's jury trial, the trial judge provided the jury with an instruction regarding self-defense, which means that the trial judge concluded that the record contained evidence that tends to support that Knipp used the force in self-defense when he struck Joshua. R.C. 2901.05(B)(1). *State v. Messenger,* 2022-Ohio-

4462 at ¶ 26. The guilty verdict means that the state met its burden of persuading the jury beyond a reasonable doubt that Knipp was not acting in self-defense when he struck Joshua. Id.

{¶23} When deadly force is used, the elements of self-defense that the state must now disprove at least one of are: (1) Knipp was not at fault in creating the situation giving rise to the affray, (2) Knipp had reasonable grounds to believe and an honest belief even if mistaken that he was in imminent danger of death or great bodily harm and that he did not use more force than necessary to defend against the attack and (3) Knipp must not have violated any duty to retreat or avoid the danger. *State v. Robbins*, 58 Ohio St.2d 74, 79, (1979) (citations omitted); *See also, State v. Watson,* 2023-Ohio-3137, ¶84 (5th Dist.); *State v. Barker*, 2022-Ohio-3756 (2nd Dist.), ¶27; *State v. Evans,* 2002-Ohio-2610 (8th Dist.), ¶ 53; *State v. Hamilton*, 2002-Ohio-3862 (12th Dist.), ¶17.

{¶24} As to the third element of self-defense, we note that the trial judge instructed the jury in accordance with the recently amended "stand your ground" law in Ohio. 4T. at 539. That law now indicates that "a person has no duty to retreat before using self-defense. . .if that person is in a place in which the person lawfully has a right to be." R.C. 2901.09(B); *State v. Messenger,* 2022-Ohio-4462, ¶10. "'Simply put, the new 'stand your ground' law removes, in most cases, the duty to retreat before using self-defense.'" *State v. Degahson,* 2022-Ohio-2972 (2nd Dist.), ¶ 15; *Watson* at ¶85; *State v. Mitchell*, 2023-Ohio-2604 (1st Dist.), ¶ 17; *State v. Robinette,* 2023-Ohio-5 (5th Dist.), ¶51.

{¶25} The second element of self-defense "is a combined subjective and objective test." *State v. Thomas*, 77 Ohio St.3d 323, 330 (1997). The person's belief must be

objectively reasonable under the circumstances and he must subjectively believe he needed to resort to force to defend himself or the other person. Id. at 330–331.

> "The objective part of the test requires consideration of 'whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack,' a reasonable person would believe that danger was imminent." *State v. Hendrickson*, 4th Dist. No. 08CA12, 2009-Ohio-4416, 2009 WL 2682158, ¶ 30, *quoting State v. Keith*, 10[th] Dist. Franklin Nos. 08AP–28, 08AP–29, 2008-Ohio-6122, ¶ 23*, citing Thomas*, 77 Ohio St.3d at 330, 673 N.E.2d 1339. The subjective part requires consideration of whether the defendant himself actually believed that he was in imminent danger. Id.

*State v. Bundy,* 2012-Ohio-3934(4th Dist.), ¶54; *Accord, State v. Wilson,* 2022-Ohio-3801(1st Dist.), ¶13.

### The State Proved Beyond a Reasonable Doubt that Knipp Did Not Use the Force in Self-defense

{¶26}  Here, the evidence does not support that Knipp possessed the necessary objective and subjective beliefs he was in imminent or immediate danger of death or great bodily harm. Generally, neither words alone nor fear itself will constitute evidence of serious provocation. "[W]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." *State v. Shane,* 63 Ohio St.3d 630, 634-45 (1992). Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage. *State v. Mack,* 82 Ohio St.3d 198, 201 (1998). Cases have held that a victim's simple pushing or punching does not

constitute sufficient provocation to incite the use of deadly force in most situations. See, *State v. Koballa,* 2003-Ohio-3535 (8th Dist.) (concluding that sufficient provocation did not exist when the victim grabbed the defendant by the testicles and the arm); *State v. Poe*, 2000-Ohio-1966 (4th Dist.) (concluding that the victim's conduct in approaching the defendant with a hammer and stating "come on" did not constitute sufficient provocation). *State v. Pack*, 1994 WL 274429 (4th Dist. June 20, 1994) ("We find that a mere shove and a swing (which appellant by his own testimony ducked) are insufficient as a matter of law to constitute serious provocation reasonably sufficient to incite or arouse appellant into using deadly force."). Although stated in terms of provocation, we find the same analysis would apply to whether a defendant, by reason of the actions of the victim, possessed the necessary objective and subjective beliefs he was in imminent or immediate danger of death or great bodily harm. *State v. Becker,* 2023-Ohio-601(5th Dist.), ¶27; *Paskins*, 2023-Ohio-3137, ¶87(5th Dist.).

**{¶27}** Implicit in the second element of self-defense is the requirement that the degree of force used was warranted under the circumstances and proportionate to the perceived threat. *State v. Kean*, 2019-Ohio-1171(10th Dist.), ¶ 58. As to the degree of force that is permitted, the defendant is privileged to use the amount of force that is reasonably necessary to repel the attack. *State v. Williford*, 49 Ohio St.3d 247 (1990). In other words, one may use a commensurate amount of force as the circumstances require to protect oneself against an attack. *Akron v. Dokes*, 31 Ohio App.3d 24, 25, (9th Dist. 1986); *Watson* at ¶88.

**{¶28}** Knipp testified to only verbal threats made by Joshua during the November 5, 2022 incident prior to Knipp's use of deadly force. The video evidence shows Joshua

was moving away from Knipp's vehicle, when Knipp turns his vehicle in Joshua's direction before striking him. Knipp admitted Joshua did not charge Knipp and that Joshua was not within arm's reach of Knipp. Knipp remained inside his vehicle throughout the encounter.

{¶29} Even setting aside the question of who the aggressor was, Knipp testified that he did not see Joshua with any sort of weapon in his hands at any time during the altercation. Knipp further admitted that nothing prevented him from choosing any of the several alternative means available to him to have exited the parking lot instead of striking Joshua. Although Knipp had no duty to retreat, he likewise could not turn his vehicle to deliberately run into an individual that was moving away from him. If Knipp's fear was only of physical harm, he was allowed by law only to use an amount of force that was warranted under the circumstances and proportionate to the perceived threat. Knipp's decision to run into Joshua with his vehicle was deadly force and was disproportionate to the threat he faced under these circumstances.

## The Jury Did Not Lose Its Way Concluding that Knipp was Guilty and that He was not Acting in Self-defense

{¶30} The term "'manifest weight of the evidence'. . .relates to persuasion." *Eastley v. Volkman*, 2012-Ohio-2179, ¶19. It "concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387(1997), *quoting Black's Law Dictionary* (6th Ed. 1990); *State v. Martin*, 2022-Ohio-4175, ¶ 26. In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [trier of fact] is best able

to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984).

{¶31} When there is conflicting testimony presented at trial, a defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented. "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Seasons Coal Co.,* Inc. at fn. 3, quoting 5 Ohio Jur.3d, Appellate Review, §603, at 191-192 (1978); *In re Z.C.,* 2023-Ohio-4703, ¶14.

{¶32} The interplay between the presumption of correctness and the ability of an appellate court to reverse a verdict based on the manifest weight of the evidence has been stated as follows, "'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" *Seasons Coal Co.,* 10 Ohio St.3d at 80, *quoting C.E. Morris Co. v. Foley Construction Co.,* 54 Ohio St.2d 279, 280 - 281. See, also, *Frankenmuth Mut. Ins. Co. v. Selz,* 6 Ohio St.3d 169, 172 (1983); *In re Sekulich,* 65 Ohio St.2d 13, 16 (1981). "The central question is whether 'there is *substantial* evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.' (Emphasis sic.) *State v. Getsy,* 84 Ohio St.3d 180, 193-194, 702 N.E.2d 866 (1998), *citing State v. Eley,* 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus, *superseded by constitutional amendment on other grounds as stated in Smith, 80 Ohio St.3d 89, 684 N.E.2d 668." Nicholson,* 2024-Ohio-604 at ¶71.

{¶33} While Knipp was free to argue that he was justified in using deadly force, and the trial court instructed the jury accordingly, the jury may have chosen to discredit his testimony. The jury saw Knipp, Joshua and all the witnesses subjected to cross-examination. The jury also reviewed the surveillance video showing the events as they happened in real time. The trial judge gave the jury the requested instruction on self-defense. The jury asked several questions concerning the law of self-defense; however, the jury ultimately concluded that Knipp did not act in self-defense. Thus, we find substantial evidence exists in the record for the jury's decision that the state disproved beyond a reasonable doubt Knipp's self-defense claim.

{¶34} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Knipp was convicted. We further find there is substantial evidence proving beyond a reasonable doubt that the degree of force used by Knipp was unwarranted under the circumstances and disproportionate to the perceived threat. Therefore, in light of the evidence discussed above, as well as the record in its entirety, we find the jury clearly did not lose its way concluding that Knipp was guilty and that he was not acting in self-defense. We find that the jury did not disregard or overlooked compelling evidence that weighed against conviction.

{¶35} Knipp's sole Assignment of Error is overruled.

{¶36} The judgment of the Richland County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Wise, J., and

King, J., concur