[Cite as *State v. Perrin*, 2026-Ohio-575.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 2025CA00044 |
| Plaintiff - Appellee | <u>Opinion and Judgment Entry</u> |
| -vs- | Appeal from the Stark County Court of Common Pleas, Case No. 2024CR2362B |
| DOROTHY PERRIN | Judgment: Affirmed |
| Defendant - Appellant | Date of Judgment Entry: February 19, 2026 |

**BEFORE:** Andrew J. King, William B. Hoffman, Kevin W. Popham, Appellate Judges

**APPEARANCES:** Kyle L. Stone, Stark County Prosecuting Attorney, Vicki L. DeSantis, Assistant Prosecuting Attorney, for Plaintiff-Appellee; George Urban, for Defendant-Appellant

OPINION

*Hoffman, J.*

{¶1}   Defendant-appellant Dorothy Perrin appeals the judgment entered by the Stark County Common Pleas Court convicting her following jury trial of felonious assault (R.C. 2903.11(A)(1)) with a firearm specification (R.C. 2941.145(A)) and discharge of a firearm on or near prohibited premises (R.C. 2923.162(A)(3)) with a firearm specification (R.C. 2945.145(A)), and sentencing her to an aggregate term of incarceration of ten to twelve years. Plaintiff-appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2}   On November 4, 2024, the victim, a resident of Canton, Ohio, was asked by his neighbor to work on her car.  While the victim was working on the car, the victim's girlfriend arrived.  A group of neighborhood women began arguing with the victim's girlfriend, and a fight ensued.  The victim tried to calm everyone down, but Appellant became angry and wanted to fight with the victim.  The victim told Appellant he did not want to fight her.  Appellant told the victim she would call people to take care of him, and he told her to do that.

{¶3}   Other people arrived and joined the fight.  A young boy pointed a gun at the victim.  The victim again tried to calm the argument down, but soon the victim was surrounded by people, who were hitting him.  Eventually, the victim was on the ground with ten to twelve people hitting him.  The victim testified, "[I]t was like a normal beatdown." Tr. (I) 174.

{¶4}   The fighting stopped and the victim tried to walk away.  The victim had a pocket knife in his pocket.  The victim told the boy if the boy intended to shoot him he

would have done so already, and told the boy he might as well give the gun to Appellant. Appellant took the gun from the boy. The victim pulled out his pocket knife. Appellant shot the victim in his arm. Initially, the victim did not realize he had been shot, and stepped toward Appellant with his knife, cutting Appellant. When the victim tried to swing at the boy, he realized Appellant had shot him in the arm.

{¶5} Appellant was indicted by the Stark County Grand Jury with felonious assault and discharge of a firearm on or near prohibited premises, both counts including firearm specifications. The case proceeded to jury trial in the Stark County Common Pleas Court.

{¶6} Appellant testified at trial. She testified on the day in question, she dropped off her friend's grandchild in the neighborhood where the victim lived. She heard a woman she knew as Miss Jamie yelling, and the victim began yelling racial slurs. The victim went after a young boy. Appellant claimed she tried to break up the fight and the victim told her to get off of him. She testified the victim spat on her. She admitted she told the victim she wanted to fight him. Appellant claimed she heard Miss Jamie yell that the victim had a knife, so she started backpedaling away while telling him to drop the knife. As she and the victim continued arguing, she grabbed the gun from the young boy. Appellant testified the victim continued threatening her life. She pointed the gun at the victim, but he continued coming toward her, and so she shot him. Appellant admitted she chose to interject herself into the altercation, and admitted she lied to police about whether she saw the victim with a knife. She said it took her some time to realize she had in fact seen a knife. She admitted she never told police she feared for her life from the victim, and admitted she touched the victim first during the fight.

**{¶7}** The jury found Appellant guilty of all charges. The trial court convicted Appellant upon the jury's verdict. The trial court found the offenses of felonious assault and discharge of a firearm on or near prohibited premises would merge for sentencing purposes only. The trial court sentenced Appellant to four to six years incarceration for felonious assault and to three years mandatory incarceration on each firearm specification, to be served consecutively, for an aggregate term of incarceration of ten to twelve years. It is from the April 4, 2025 judgment of the trial court Appellant prosecutes her appeal, assigning as error:

I.  THE APPELLANT WAS DENIED HER SIXTH AMENDMENT RIGHT TO AN IMPARTIAL JURY WHEN THE TRIAL COURT FAILED TO EXCLUDE A BIASED JUROR.

II.  THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

I.

**{¶8}** In her first assignment of error, Appellant argues the trial court erred in failing to sua sponte remove Juror Number 138, who is a personal friend of one of the police detectives who testified in the case. We disagree.

**{¶9}** During voir dire, Juror Number 138 disclosed a personal relationship to Detective Huber, one of the testifying witnesses in the case:

THE COURT: At this time the witnesses are [the victim], Gabriel Fuller of the Canton Police Department, and Robert Huber of the Canton Police Department.  Have any of you heard or otherwise been acquainted with or are you related to any of these witnesses I've just mentioned?

Juror Number 138, who sounds familiar to you?

JUROR NO. 138: Robert Huber.

THE COURT: All right.  And how does Robert Hubert sound familiar to you?

JUROR NO. 138: We're personal friends.  I know his family fairly well.

THE COURT: Anything about that relationship that would make it difficult for you to be fair and impartial?

JUROR NO. 138: No ma'am.

{¶10}  Tr. (I) 43-44.

THE COURT: How many of you have either personally prior experience either in law enforcement or in the legal profession or have close family or friends involved in the law enforcement or legal profession?

THE COURT: Juror Number 138, did you have your hand up?

JUROR NO. 138: I did.  Canton police officer, personal friend.

THE COURT: Okay. Very good.

**{¶11}** Tr. (I) 47, 50.

THE COURT: So after listening to all the questions put to you by myself and the attorneys, other than maybe what we've discussed so far today, is there any reason why any one of you can think of as to why you would not be a fair and impartial juror in this case? (No negative responses).

**{¶12}** Tr. (I) 123.

**{¶13}** Appellant did not challenge Juror No. 138 for cause, and did not exercise a peremptory challenge to dismiss the juror.

**{¶14}** Crim. R. 24(C) sets forth the reasons a juror may be challenged for cause, in pertinent part:

(9) That the juror is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

(14) That the juror is otherwise unsuitable for any other cause to serve as a juror.

**{¶15}** A trial court may, in the exercise of its discretion, sua sponte dismiss a juror when it determines a juror possesses either enmity or bias toward a party or determines for some other reason a juror is not impartial or is otherwise unsuitable for service. *State v. Midwest Pride IV, Inc.,* 131 Ohio App.3d 1, 20 (12th Dist. 1998). A trial court's ruling "will not be disturbed on appeal unless it is manifestly arbitrary." *Id*.

**{¶16}** We find the trial court did not abuse its discretion in failing to excuse Juror No. 138 sua sponte. The juror indicated he or she could remain impartial despite having a friendship with Detective Huber. Appellant's claim the juror could not be impartial based on having a personal friendship with a witness is speculative and not supported by the record.

**{¶17}** Appellant also argues the inclusion of Juror No. 138 was structural error. We disagree.

**{¶18}** A constitutional error is structural when it affects the framework in which the trial is conducted, rather than simply being an error in the trial process itself. *State v. Jones*, 2020-Ohio-3051, ¶ 20. The Supreme Court of Ohio addressed when structural error analysis should be used in *State v. Perry*, 2004-Ohio-297, ¶ 23:

> We emphasize that both this court and the United States Supreme Court have cautioned against applying a structural-error analysis where, as here, the case would be otherwise governed by Crim.R. 52(B) because the defendant did not raise the error in the trial court. See *Hill*, 92 Ohio St.3d at 199, 749 N.E.2d 274; *Johnson*, 520 U.S. at 466, 117 S.Ct. 1544, 137 L.Ed.2d 718. This caution is born of sound policy. For to hold that an error

is structural even when the defendant does not bring the error to the attention of the trial court would be to encourage defendants to remain silent at trial only later to raise the error on appeal where the conviction would be automatically reversed. We believe that our holdings should foster rather than thwart judicial economy by providing incentives (and not disincentives) for the defendant to raise all errors in the trial court-where, in many cases, such errors can be easily corrected.

**{¶19}** *State v. Jones*, 2018-Ohio-4089, ¶ 12.

**{¶20}** In the instant case, Appellant could have raised the error in the trial court by challenging the juror for cause. We find structural error does not apply in the instant case.

**{¶21}** The first assignment of error is overruled.

II.

**{¶22}** In her second assignment of error, Appellant argues her conviction of felonious assault is against the manifest weight of the evidence. Specifically, Appellant argues the State failed to satisfy its burden to prove beyond a reasonable doubt Appellant did not shoot the victim in self-defense. We disagree.

**{¶23}** The term "manifest weight of the evidence" relates to persuasion. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. It concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by constitutional amendment on other grounds as stated in State v. Smith,* 80 Ohio St.3d 89, 102 n.4 (1997); *State v. Martin*, 2022-Ohio-4175, ¶ 26.

**{¶24}** In determining whether a judgment is against the manifest weight of the evidence, an appellate court reviews the entire record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). Sitting as the "thirteenth juror," the court of appeals considers whether the evidence should be believed and may overturn a verdict if it disagrees with the trier of fact's conclusion. *Id.*

**{¶25}** When conducting a manifest weight review, the question is whether the jury clearly lost its way in resolving conflicts, resulting in a manifest miscarriage of justice, even if the evidence is legally sufficient. *Thompkins*, 78 Ohio St.3d at 387; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001). Appellate courts have traditionally presumed the jury's assessment is correct, given its ability to observe witnesses' demeanor, gestures, and tone, all critical factors in evaluating credibility. *Eastley*, 2012-Ohio-2179, at ¶ 21; *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

**{¶26}** A manifest-weight claim succeeds only in "the exceptional case in which the evidence weighs heavily against the conviction." (Internal quotations omitted.) *Thompkins*, 78 Ohio St.3d at 387. To reverse a conviction on manifest-weight grounds, all three judges on the appellate panel must concur. Ohio Const., Art. IV, § 3(B)(3); *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶¶ 2-4, *citing Thompkins*, syllabus ¶ 4.

**{¶27}** Appellant was convicted of felonious assault in violation of 2903.11(A)(1), which provides, "No person shall knowingly…[c]ause serious physical harm to another or to another's unborn[.]"

**{¶28}** "When an accused asserts the defense of self-defense he does not seek to negate any of the elements of the offense which the state is required to prove." *State v. Watson*, 2023-Ohio-3137, ¶ 80 (5th Dist.). "Self-defense is not merely a denial or contradiction of evidence offered by the state to prove the essential elements of the charged crime." *Id*. Rather, it is an admission of the prohibited conduct coupled with a claim the surrounding facts or circumstances exempt the accused from liability, and justify the admitted conduct. *Id.*

**{¶29}** Pursuant to R.C. 2901.05(B)(1) there are two burdens when a defendant claims self-defense. *State v. Davidson-Dixon*, 2021-Ohio-1485, ¶ 18 (8th Dist.). The defendant has the initial burden of production, which is the burden of producing evidence "that tends to support" the defendant used the force in self-defense. *State v. Messenger*, 2022-Ohio-4562, ¶ 21. The burden then shifts to the State, which under its burden of persuasion, must prove beyond a reasonable doubt the defendant did not use the force in self-defense. *Id*. at ¶ 24. In other words, if the evidence tends to support the defendant acted in self-defense, then the prosecution must prove beyond a reasonable doubt the defendant did not act in self-defense. R.C. 2901.05(B)(1); *Id*. at ¶26; *State v. Gatewood,* 2021-Ohio-3325, ¶ 68 (1st Dist.).

**{¶30}** In order to establish the inapplicability of self-defense, the State must prove beyond a reasonable doubt: (1) the defendant was at fault in creating the situation giving rise to the affray; (2) the defendant lacked a bona fide belief he was in imminent

danger of death or great bodily harm or that another means of escape from such danger existed negating the need for the use of deadly force; or (3) the defendant violated a duty to retreat or avoid the danger. *State v. Walker,* 2021-Ohio-2037, ¶ 14 (8th Dist.). The State "need only disprove one of the elements of self-defense to sustain its burden at trial" of proving the defendant was not acting in self-defense. *Id.*

{¶31} Appellant argues the evidence established the victim was the initial aggressor, thus the State failed to disprove element one, Appellant was not at fault in creating the situation giving rise to the affray. She argues the evidence demonstrated she feared for her life when she shot Appellant, and thus the State failed to disprove element two. Finally, she argues there is no need to analyze the duty to retreat because she was on a public street. Appellant argues the jury lost its way in finding her guilty of felonious assault because the State failed to disprove any of the elements of self-defense.

{¶32} As to element one, we find the jury's finding the State disproved the first element of self-defense would not be against the manifest weight of the evidence. Appellant admitted at trial she became involved in the neighborhood fight even though it did not have anything to do with her. She admitted she wanted to fight with the victim because he spat on her, and told the victim to "[r]un up on" her. Tr. (II) 364. Appellant testified at trial she was looking for a fight, and admitted she "put hands on" the victim first. Tr. (II) 372.

{¶33} We also find the jury's finding the State disproved the second element of self-defense would not be against the manifest weight of the evidence. The second element of self-defense "is a combined subjective and objective test." *State v. Helmondollar*, 2024-Ohio-2077, ¶ 43 (5th Dist.), *quoting State v. Thomas*, 1997-Ohio-269

(1997). Thus, Appellant's "belief must be objectively reasonable under the circumstances and he must subjectively believe he needed to resort to force to defend himself." *Id*. Generally, neither words alone nor fear itself will constitute evidence of serious provocation. *State v. Knipp,* 2024-Ohio-2143, ¶ 26. "[W]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." *Id., citing State v. Shane*, 63 Ohio St. 3d 630,634-35 (1992).

**{¶34}** Appellant testified at trial she feared for her life because the victim verbally threatened to kill her, had a knife in his possession, and continued to advance toward her even after she took the gun from the young boy. However, when interviewed by police, Appellant did not tell police she feared for her life. She admitted at trial she lied to police about the victim cutting her before she shot him, and admitted at trial she shot him before he cut her with the knife. She testified the victim threatened to kill her, but also admitted she was talking as much "smack" as the victim. Tr. (2) 349. From the victim's testimony, the jury could reasonably find she did not shoot the victim because she subjectively feared for her life from the knife in his possession, but shot him because she was angry he spat on her and used racial slurs during the argument.

**{¶35}** We find the judgment of conviction is not against the manifest weight of the evidence. The second assignment of error is overruled.

**{¶36}** The judgment of the Stark County Common Pleas Court is affirmed. Costs are assessed to Appellant.

By: Hoffman, J.

King, P.J. and

Popham, J. concur