[Cite as *State v. Norman*, 2026-Ohio-2029.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
TUSCARAWAS COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO, | Case No. 2025 AP 10 0034 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Tuscarawas Common Pleas Court, Case No. 2024 CR 04 0120 |
| JEFFREY A. NORMAN, | Judgment:  Affirmed |
| Defendant - Appellant | Date of Judgment Entry: May 28, 2026 |

**BEFORE:** Andrew J. King; William B. Hoffman; Robert G. Montgomery, Judges

**APPEARANCES:** KRISTINE W. BEARD, for Plaintiff-Appellee; DAN GUINN, for Defendant-Appellant.

*Montgomery, J.*

**{¶1}** Defendant-Appellant, Jeffrey Norman ("Appellant"), appeals from the judgment of the Tuscarawas County Court of Common Pleas finding Appellant guilty, after a jury trial, of aggravated possession of drugs and illegal use or possession of drug paraphernalia. For the reasons below, we AFFIRM.

**STATEMENT OF THE CASE**

**{¶2}** Appellant was indicted by the Tuscarawas County Grand Jury for One Count of Aggravated Possession of Drugs in violation of R.C. 2925.11(A), a second-degree felony, and one Count of Illegal Use or Possession of Drug Paraphernalia, a fourth-degree misdemeanor.  Appellant pled not guilty and the matter proceeded to jury trial.  In

addition to the State's witnesses and Exhibits (police cruiser video and the officers' body cam video), Appellant testified on his own behalf. After the presentation of evidence, the jury found Appellant guilty as charged. On October 1, 2025, the trial court sentenced Appellant to an aggregate prison sentence of four (4) years minimum to six (6) years maximum. Appellant timely appealed his convictions.

## STATEMENT OF FACTS

{¶3} On November 11, 2023, at around 10:00 p.m., the New Philadelphia Police Department received a call regarding an "unwanted person" in the area of Sherman Ave., in New Philadelphia, Ohio. In response, Sergeant Clark and Patrolman Shaffer were dispatched. Sergeant Clark stated the caller identified a white male in a white car outside the caller's residence. The caller said the driver was trying to get his girlfriend to leave with him. Upon arrival, the officers observed a male in a white vehicle, and pulled behind the vehicle and ran the license plate; it came back to Appellant. They learned that Appellant was operating the vehicle with a suspended license.

{¶4} The officers approached the vehicle and identified Appellant as the driver. Sergeant Clark informed Appellant that his license was suspended, a fact Appellant disputed. Officer Shaffer approached the passenger side and testified he "shined his flashlight into the vehicle" and immediately observed a glass pipe laying on the center console, right beside Appellant. The observed pipe is commonly known to be used for smoking methamphetamines ("meth"). Officer Shaffer relayed the information to a third officer, who had a canine with him. The officer walked the canine around the car. Based on the meth pipe being present, and the license being under suspension, the officers searched the vehicle. The officers recovered two glass meth pipes, a digital scale with

crystal-like residue on it, and a large baggie of a crystal-like substance that appeared to be meth.

{¶5} Meanwhile, while the officer conducted the vehicle search, Appellant was seated in the back of the police cruiser and made a phone call. On cross-examination, Appellant admitted he made a call at the scene to his girlfriend, and during the call he told his girlfriend, "major shit was going on and it was going to be real bad." *Tr.*, p. 209. Appellant also told the officers that the crystal residue on the digital scale was "quartz," a commonly used street name for meth. The police cruiser video and officer body-cam footage reflecting the interaction and Appellant's phone call were played to the jury during trial.

{¶6} The officers later submitted the baggie to the Bureau of Criminal Intelligence ("BCI") for forensic analysis; Shervonne Bufford from BCI completed the forensic testing. The glass pipes and the scale were not submitted for further testing. Ms. Bufford testified that the crystalline substance weighed forty-one point eighty-six (41.86) grams and was positively identified as Methamphetamine, a Schedule II stimulant. Appellant himself testified that the 41.86 grams could be broken down into approximately 410 personal use amounts. Appellant essentially claimed that the resident who made the 911 call planted the drugs and drug paraphernalia in his vehicle prior to the officers' arrival. As stated, the jury found Appellant guilty as charged. This appeal followed.

## SOLE ASSIGNMENT OF ERROR

{¶7} "I. THE APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY EITHER THE LEGALLY SUFFICIENT EVIDENCE OR THE WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL."

## STANDARD OF REVIEW

{¶8} The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 (1997), fn. 4; *State v. Worley,* 2021-Ohio-2207, ¶57. A sufficiency-of-the-evidence challenge asks whether the evidence is "legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 2011-Ohio-4215, ¶ 219. Stated differently, "[a] sufficiency * * * argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2009-Ohio-525, ¶ 10 (2d Dist.).

{¶9} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *State v. Williams*, 2003-Ohio-4396, ¶ 83. When a court of appeals reverses a judgment of a trial court as against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of conflicting testimony. *State v. Jordan*, 2023-Ohio-3800; *Thompkins*, at 387; *Williams*, ¶ 60. The reviewing court must determine whether the jury clearly "lost its way and created such a manifest miscarriage of justice" that the conviction cannot stand, and a new trial must be ordered. *Id.*, quoting *State v. Group*, 2002-Ohio-7247, ¶ 77 (citations omitted); *State v. Perrin*, 2026-Ohio-575, ¶ 25, *Thompkins*, at 387. ("When conducting a manifest weight review, the question is whether the jury clearly lost its way in resolving conflicts, resulting in a manifest miscarriage of justice, even if the evidence is legally sufficient.") Reversing a conviction as being against the manifest

weight of the evidence and ordering a new trial should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *State v. Dotson*, 2017-Ohio-5565, ¶ 1 (5th Dist.).

{¶10} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." *State v. McCrary,* 2011-Ohio-3161, ¶ 11 (10th Dist.), citing *State v. Braxton*, 2005-Ohio-2198, ¶ 15 (10th Dist.) (noting that "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.") (other citation omitted); *State v. Winbush,* 2017-Ohio-696, ¶ 58 (2d Dist.). As a result, a determination that a judgment is supported by the weight of the evidence will also be dispositive of sufficiency. *State v. Farra,* 2022-Ohio-1421, ¶ 50 (2d Dist.).

{¶11} In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact. *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 21; *In re ZAC.,* 2023-Ohio-4703, ¶ 14. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984).

{¶12} In determining whether a witness is credible, the trier of fact is in the best position to consider inconsistencies in testimony, as well as the witnesses' demeanor and manner of testifying. *Dotson*, ¶ 50. A defendant is not entitled to a reversal on manifest weight grounds simply because there was inconsistent evidence presented at trial. *Id*.;

*State v. Raver*, 2003-Ohio-958, ¶ 21 (10th Dist.). If the evidence is susceptible to one or more interpretations, a reviewing court must interpret it in a manner consistent with the verdict. *Dotson*, ¶ 49; *State v. Adams*, 2014-Ohio-3432, ¶ 24 (2d Dist.) ("The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence.")

**{¶13}** Importantly, circumstantial evidence has the same probative value as direct evidence, and a conviction can be sustained based on circumstantial evidence alone. *State v. Mahone*, 2014-Ohio-1251, ¶ 48 (10th Dist.). It is within the province of the jury to consider the probative value of the evidence, whether direct or circumstantial, and to draw reasonable inferences from the facts and testimony in evidence. *Id.*, ¶ 49.

## ANALYSIS

**{¶14}** In Appellant's sole assignment of error, he argues his convictions are not supported by legally sufficient evidence and are against the manifest weight of the evidence. In support, Appellant asserts the following reasons: (1) the State failed to prove that the items from Appellant's vehicle constituted "drug paraphernalia;" (2) the State failed to prove that Appellant was in possession of meth and drug paraphernalia; and (3) the jury did not give sufficient weight to Appellant's testimony that the drugs and drug paraphernalia were planted in the vehicle without his knowledge. We disagree with Appellant's arguments and conclude that both convictions are supported by legally sufficient evidence and are not against the manifest weight of the evidence.

### *Drug Paraphernalia*

**{¶15}** R.C. 2925.14(C)(1) sets forth the elements for Illegal Use or Possession of Drug Paraphernalia and states that "no person shall knowingly use, or possess with purpose to use, drug paraphernalia." Drug paraphernalia is defined as:

any equipment, product, or material of any kind that is used by the offender, intended by the offender for use, or designed for use, in propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body, a controlled substance. Drug paraphernalia includes a scale used for weighing or measuring a controlled substance and/or an object, instrument or device for ingesting, inhaling, or otherwise introducing a drug into the human body.

R.C. 2925.14 (A)(6) and (A)(13).

**{¶16}** In determining whether items constitute drug paraphernalia, factors to consider include the proximity of the equipment, product, or material to the controlled substance, and the existence of any residue on the equipment, product, or material. *See* R.C. 2925.14(B)(3) and (B)(4).

**{¶17}** As stated above, when the officers approached Appellant and his vehicle, Officer Shaffer immediately observed a meth pipe on the center console, in close proximity to Appellant and in close proximity to the drugs. As they searched the vehicle, they discovered another meth pipe, a scale with a crystal-like substance residue on it, and a large baggie of what was ultimately identified as 41.86 grams of meth. Sergeant Clark and Officer Shaffer testified that the large baggie was found "inside of the pouch that was located on the – behind the passenger's seat." *Tr.*, pp. 118, 138. Appellant was the owner of the vehicle, was in the driver's seat when the officers arrived, and was the only person in the vehicle.

**{¶18}** Officer Shaffer testified that the glass pipes seized are commonly used for meth abuse and the scale is commonly used to measure drugs. Regarding the scale, Officer Shaffer testified "just based on my experience, that normally means that they would weigh out the drugs per say, * * * either to – with the intention to sell it or give it to people." *Tr.*, p. 137. Officer Shaffer also testified that one pipe was discolored and appeared to have residue, indicating <u>recent</u> use. Appellant also made a phone call while in the back of the police cruiser that was less than favorable to Appellant's theory of the case.

**{¶19}** Based on the testimony and exhibits admitted at trial, the jury could certainly infer that the items found in Appellant's vehicle were in fact Appellant's, that he either used or possessed these items, and that said items met the definition of drug paraphernalia. The jury was free to disbelieve Appellant's theory that someone planted the items in his vehicle prior to the officers' arrival. *Dotson*, ¶ 50; *Raver*, ¶ 21. Thus, the jury did not clearly lose its way in finding Appellant guilty. The conviction for illegal use or possession of drug paraphernalia is supported by legally sufficient evidence and is not against the manifest weight of the evidence.

### *Aggravated Possession of Drugs*

**{¶20}** R.C. 2925.11(A), states that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog" (meth). R.C. 2925.01(K) defines possession as follows: "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." *State v. Morales,* 2005-Ohio-4714, ¶ 50 (5th Dist.).

{¶21} Possession may be actual or constructive. *Id.*, citing *State v. Butler,* 42 Ohio St.3d 174, 176 (1989). To establish constructive possession, the evidence must demonstrate the defendant was able to exercise dominion and control over the substance. *Morales,* ¶ 50, citing *State v. Wolery,* 46 Ohio St.2d 316, 332 (1976). Circumstantial evidence that the defendant was located in very close proximity to the contraband may establish constructive possession. *Morales*, ¶ 50; *Butler*, supra; *State v. Moses,* 2004-Ohio-4943, ¶ 9 (5th Dist.).

{¶22} Again, based on the testimony and exhibits admitted at trial, a jury could reasonably conclude that Appellant was in possession of meth. The baggie of drugs and drug paraphernalia were located in both the front and back of Appellant's vehicle in which Appellant was the sole occupant. The amount of meth seized was significant. Appellant testified that the 41.86 grams could be broken down into 410 personal uses. The seized pipes, typically used for meth abuse, were located near Appellant and in plain sight of the officers. *Tr.*, pp. 135-136, 138. One pipe was next to Appellant's arm on the center console and the other contained residue, indicating recent use. Further, Appellant was aware of the residue on the scale and in fact told the officers that the residue was quartz, a common street name for meth. The scale was identified as being commonly used to measure drugs. In other words, the drugs and drug items were found in close proximity to Appellant, in Appellant's vehicle, and under Appellant's sole control. This evidence could lead a jury to reasonably conclude that Appellant indeed possessed drugs in violation of R.C. 2925.11(A).

{¶23} Quite simply, Appellant's arguments relate to the credibility of the witnesses and variances in testimony, including his own testimony. The jury chose to believe the State's evidence and disbelieve Appellant's theory of the case, which is precisely the

function of the jury. The record supports the jury's conclusion. This is not an exceptional case in which the evidence weighs heavily against Appellant's convictions. Thus, Appellant's conviction for aggravated possession of drugs is supported by sufficient evidence and is not against the manifest weight of the evidence. **Appellant's sole assignment of error is overruled.**

## CONCLUSION

{¶24} Based on the above, Appellant's sole assignment of error is overruled. The judgment of the Tuscarawas County Court of Common Pleas is affirmed.

{¶25} Costs to Appellant.

By: Montgomery, J.

King, P.J. and

Hoffman, J. concur.